JOHN V. TIFFT et al., Appellants, *v*. THE CITY OF BUFFALO, Respondent.

The act entitled "An act to legalize certain proceedings of the common council of the city of Buffalo" (chap. 2, Laws of 1875), which ratifies and confirms the proceedings of the common council in the matter of the repairs of the "Hamburgh Turnpike," is not violative of the provision of the State Constitution declaring it to be the duty of the legislature, to restrict the power of assessment in cities so as to prevent abuse in assessments, as the provision is not a limitation upon the legislature, and the power of assessment created by the act is not a power exercised by the city, but by the legislature.

The legislature has power thus to adopt and legalize the acts of a municipality, invalid because of irregularity merely in the mode of procedure, when there was municipal jurisdiction of the subject-matter.

It is not an unlawful exercise of the legislative power of retrospective legislation to take away defenses based upon mere informalities; a party has no vested right in such a defense, where it does not affect his substantial equities.

Said act is not repugnant to the constitutional provision (art. 3, § 16) declaring that no private or local bill shall embrace more than one subject, and that shall be expressed in the title.

Said act is not in contravention of the provision of the Constitution (art. 3, § 18) prohibiting the legislature from passing a private or local bill for

the laying out, opening, altering, etc., of a highway, as it does not originate the work, but simply cures defective proceedings.

As to whether, if the act had originated the work, it would have been in conflict with this provision, *quære.*

The turnpike in question formerly belonged to the B. & H. T. Co., which, by its charter, had power to purchase, hold and convey real estate necessary for its use; the lands used were conveyed to said corporation in fee for the uses and purposes of a road; the deed, aside from specifying this purpose, contained no limitation or condition. After the said corporation ceased to keep up the road, and was dissolved, the city assumed the care of it as one of its streets, and it has, since it was laid out by that company, always been used as a highway. *Held,* that the lands did not revert to the original owners upon dissolution of the corporation; and that, assuming the provision of the act of 1838 (§ 1, chap. 262, Laws of 1838), declaring that when a turnpike corporation shall be dissolved and the road discontinued it shall become a public highway, did not apply so long as any rights of the company remained to be affected, yet it was a legislative declaration of the effect of a discontinuance; and so when the corporation ceased to exist, and its franchise went back to the State that had given it, the public interest in the road remained.

*It seems,* however, that such an assumption is not well founded.

*It seems,* also, that if the public use put upon the lands had been different in its nature, as the laying of a railway, or if there had been an abandonment of the road, and a discontinuance of its use as a highway, the case would have been different.

Although an appropriation or conveyance of lands be for a public use, and it be so expressed in the law authorizing the appropriation, or in the deed, this does not prevent the passage of the absolute title, so as to cut off all right of *reverter* to the former owner or the grantor.

Also, *held,* that the said act of 1875, although by its terms simply ratifying and confirming what had been done by the common council made the steps taken the proper ones to produce a valid local assessment, for the expenditures in repairing said road, and validated the assessment made therefor.

(Argued June 17, 1880; decided September 28, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, affirming a judgment in favor of defendant, entered upon decision of the court on trial at Special Term.

This action was brought to set aside an assessment upon premises of plaintiffs for repairs upon a street in the city of Buffalo, known as the "Hamburgh Turnpike."

The facts appear sufficiently in the opinion.

*George Wadsworth* for appellants. This action can be maintained. (*Scott* v. *Onderdonk*, 14 N. Y. 9; *Lewis* v. *Buffalo*, 29 How. Pr. 335; *Hatch* v. *Buffalo*, 38 N. Y. 276; *Allen* v. *Buffalo*, 39 id. 386; *Crooke* v. *Andrews*, 40 id. 547; *Newell* v. *Wheeler*, 48 id. 486; *Hebrew F. S. Ass.* v. *Mayor*, 4 Hun, 446; *Hassan* v. *Rochester*, 67 N. Y. 528; *Ward* v. *Dewey*, 16 id. 519.) The assessment in question is illegal and void because the *locus in quo* was not a public street or highway, but was private property, and the city of Buffalo had no right to construct, maintain or repair a road thereon, nor could the legislature authorize it so to do. (Laws 1826, chap. 170, p. 160; 1 Laws 1813, chap. 38, p. 228; 2 id., chap. 91, p. 224; *Hooker* v. *U. & M. Turnpike Co.*, 12 Wend. 371, 373; *Dunham* v. *Williams*, 36 Barb. 136, 163; *In re John and Cherry Sts.*, 19 Wend. 659, 675; *Mahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658; *People* v. *White*, 11 Barb. 26; *Heyward* v. *Mayor, etc.*, 8 id. 492; *North. Turnpike Co.* v. *Smith*, 11 id. 357; *People* v. *Law*, 34 id. 500; *Strong* v. *Brooklyn*, 16 id. 111; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97; *People* v. *Kerr*, 27 id. 196.) In the attempted abandonment the turnpike company did not comply with the act of 1854, and so its action was ineffectual. (*Rider* v. *Stryker*, 63 N. Y. 136.) The assessment is illegal and void because the defendant never acquired jurisdiction to order the work or make the assessment; it did not comply with the requirements of its charter. (2 Laws 1870, p. 1204, §§ 7, 8; *In re Petition of Ford*, 6 Lans. 92; *Miller* v. *Buffalo Supr. Ct. of Buffalo*, not reported.) The confirmatory act of January 22, 1875, does not make this assessment valid. (*Donovan* v. *The Mayor*, 33 N. Y. 291.) That act violates section 9 of article 8 of the Constitution. (*In re Albany St.*, 11 Wend. 151; *Hopkins* v. *Mason*, 61 Barb. 470; *Howell* v. *Buffalo*, 37 N. Y. 267; Laws 1863, chap. 196, p. 333.) It violates section 16 of article 3 of the Constitution. (*People* v. *Hills*, 35 N. Y. 449; *People* v. *O'Brien*, 38 id. 193; *People* v. *Banks*, 67 id. 568.) The complaint in this case should not be dismissed on the ground that the act of 1875 legalizing defendant's proceedings is uncon-

stitutional. (*Hatch* v. *Buffalo*, 38 N. Y. 276; *Allen* v. *Buffalo*, 39 id. 386; *Lewis* v. *Buffalo*, 29 How. Pr. 335; Sess. Laws 1870, p. 1193, §§ 1, 3; p. 1194, § 12; pp. 1196, 1197, §§ 24, 25, 26, 27, 28, 29; p. 1199, § 36.)

*P. A. Matteson* for respondent. The claim of appellants, that when the turnpike company abandoned the road in 1871 the land reverted, is not sound. (*Munn* v. *Illinois*, 94 U. S. 128.) The road having become a public highway by act of the legislature, and being situated within the limits of the corporation, it acquired all the rights and became subject to all the duties in respect thereto, as if it had acquired the property by right of eminent domain, or by voluntary cession of the owner. (*Elmendorf* v. *Albany*, 17 Hun, 81; *Walker* v. *Caywood*, 31 N. Y. 51; *Bagg* v. *Detroit*, 5 Mich. 336; *State* v. *New Brunswick*, 32 N. J. Law, 548; 30 id. 395; *Hooker* v. *Utica Turnpike Co.*, 12 Wend. 371; *Durham* v. *Williams*, 36 Barb. 136, 163; *Matter of John St.*, 19 Wend. 659, 675; *Mahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658; *North Turnpike Co.* v. *Smith*, 15 Barb. 357; *Heath* v. *Barmore*, 50 N. Y. 302; 7 id. 214; 11 id. 308.) Unless required by law, an assessment is not valid, for want of a prior notice of intention to make the improvement. (*Ex parte Zborowski*, 68 N. Y. 88.) The confirmatory act of 1875 (chap. 2) was valid. (Cooley's Const. Lim. 370, 371, 373, 379; *Matter of Sackett St.*, 74 N. Y. 95; *Williams* v. *Duanesburgh*, 66 id. 137; *People* v. *McDonald*, 69 id. 368.) If the legislature possesses the power to authorize an act to be done, it can, by a retrospective act, cure the evils which existed, because the power thus conferred has been irregularly executed. (*People* v. *Mitchell*, 35 N. Y. 551; *City of Emporia* v. *Norton*, 13 Kans. 570; *Brown* v. *Mayor*, 63 N. Y. 239, 244; *Musselman* v. *Logansport*, 29 Ind. 533; *People* v. *Todd*, 23 Cal. 181; *People* v. *Seymour*, 16 id. 332; *Boardman* v. *Beckwith*, 18 Iowa, 292; *People* v. *Holliday*, 25 Cal. 300; *Blount* v. *Janesville*, 31 Wis. 649, 657–9; *Lennon* v. *Mayor*, 5 Daly, 347; 55 N. Y. 361; *Astor* v. *Mayor*, 37 N. Y. Super. Ct. 539; *Mann* v. *Utica*,

44 How. 334; *Reiss* v. *Graff*, 51 Cal. 86; *People* v. *O'Neill*, id. 91; *People* v. *Kinsman*, id. 93; *People* v. *McCain*, id. 360; *Cowgill* v. *Long*, 15 Ill. 202; *In re Mayer*, 50 N. Y. 504; *State* v. *Town of Union*, 32 N. J. Law, 350, 355–6; *State* v. *Newark*, 3 Dutcher, 195–7; 34 N. J. L. 237; *Howell* v. *Buffalo*, 37 N. Y. 267; *Mill* v. *Charlet*, 29 Wis. 401; *Dill* v. *Roberts*, 30 id. 179; *Dean* v. *Borchsenius*, id. 236; *Evans* v. *Sharp*, 29 id. 564; *May* v. *Holdridge*, 23 id. 93; *Tallman* v. *Janesville*, 17 id. 71; *Cross* v. *Milwaukee*, 19 id. 509.) The act of 1875, confirming and legalizing the proceedings in question, does not violate any constitutional provision. (*City of Emporia* v. *Norton*, 13 Kans. 586; *Dean* v. *Borchsenius*, 30 Wis. 244–5; *Grant* v. *Courter*, 23 Barb. 232; *People ex rel.* v. *Mayor*, 4 N. Y. 419; *Benson* v. *Mayor*, 24 Barb. 248; *Bank of Rome* v. *Rome*, 18 N. Y. 38.) The purpose of section 16 of article 3 of the Constitution was that neither members of the legislature nor the public should be misled by the title of an act; not that the latter should embody all the distinct provisions of the bill in detail. (*People ex rel. Comrs.* v. *Banks*, 67 N. Y. 572, 574; *Matter of Mayer*, 50 id. 504; *People* v. *Briggs*, id. 553; *Brewster* v. *Syracuse*, 19 N. Y. 116; *Sun M. Ins. Co.* v. *New York*, 8 id. 241, 253; *Matter of Van Antwerp*, 56 id. 261, 266; *Hurlburt* v. *Banks*, 1 Abb. N. C. 163–4; 3 Const. Debates, 2102–4; *State* v. *Town of Union*, 33 N. J. L. 350; *State* v. *County Judge*, 2 Iowa, 282; *People* v. *Mahony*, 13 Mich. 495; *Mills* v. *Charleton*, 29 Wis. 401; *Evans* v. *Sharp*, id. 564.) The act of 1875 (chap. 2) does not violate section 18, article 3 of the Constitution, which prohibits the legislature from passing a private or local bill. (*Hurlburt* v. *Banks*, 1 Abb. N. C. 158.) An action to vacate an assessment as a cloud upon title, on the ground that the act authorizing it is unconstitutional, cannot be maintained. (*Wells* v. *Buffalo*, Ct. of App., Feb. 24, 1880; *Stuart* v. *Palmer*, 74 N. Y. 183.)

FOLGER, Ch. J.  It was conceded in the court below, and it may be in this court for the purposes of this case, that the pro-

ceedings first had by the defendant for the repair of this way, and the assessment of the expense, were invalid, inasmuch as they did not comply with the requirements of its charter. (Laws of 1853, chap. 230, p. 447.) It is left, then, to inquire whether the act of the legislature (Laws of 1875, chap. 2, p. 8), " to legalize certain proceedings of the common council of the city of Buffalo," was valid and effectual to that end. The appellants impugn it on four grounds:

First. That it is against the ninth section of article 8 of the State Constitution, which declares that it shall be the duty of the legislature to restrict the power of assessment in cities, so as to prevent abuses in assessments.

It seems that the legislature did its duty in this regard, when it made a charter for the defendant. The power of assessment was restricted thereby. We do not think that the passage of the act of 1875 was an abandonment of that duty. The power of assessment by that act exerted was not a power put forth by the defendant; it was the power of the legislature which made the assessment legal, if it was legal in the end. The section of the Constitution referred to is not a limitation upon the legislature, in the exercise of the legislative discretion and power to tax and assess; it is a limitation only upon its power to delegate authority to cities and villages to tax and assess. There are two ways in which the legislature might constitutionally have directed the doing of this work. It has the power to direct that any such work of public use and incidental private benefit shall be done, and that the expense of it shall be a burden upon the property benefited, or may be laid upon such portion of the State in which the work is done as it sees fit. (*Thomas* v. *Leland*, 24 Wend. 65, which is sometimes called an extreme case; *The People* v. *Mayor of Brooklyn*, 4 N. Y. 419; *The People ex rel. McLean* v. *Flagg*, 46 id. 401.) We could assume that the legislature, looking upon what the defendant had done in this matter, saw that it was not good; in that it was not within the formal, and because prescribed the substantial requirements of the charter of the defendant; but deeming also that what had been done, though not in accord

with the prerequisites, was good in its purpose, calculated to meet a public need and to benefit private persons, judged it proper to adopt the invalid acts of the defendant and make them legal, and as an exercise of legislative will to order that the work be paid for by assessment on the property benefited. Again, the legislature has the power to a certain extent of retrospective legislation. It is not an unlawful exercise of this power to take away defenses based upon mere informalities. A party has no vested right in a defense based upon an informality not affecting his substantial equities. (Cooley on Const. Lim. 370, and cases cited.) The legislature may change or modify the effect of prior transactions, in cases where retrospective legislation is not forbidden by the fundamental law. (Id.) Such legislation has been held to be lawfully directed to the cure of irregularities in the assessment of property for taxation and the levy of taxes thereon. (*Schenley* v. *Commissioners*, 36 Penn. St. 29; *In the Matter of Sackett St.*, 74 N. Y. 95.) And when the remedy is applied by the legislature itself in the exercise of its discretionary power, it is not to be said that it has violated the duty to restrict the city in the power of assessment. No power has been thereby given to the city to assess loosely or profusely. The assessment has been in reality made by the legislature. All the restrictions upon municipal action in any other or future assessment are untouched. It is the specific case only that is affected, and that is done by legislative power immediately applied to it. Nor did the proper exercise of legislative power require that the mode taken should be a direction to the city to reassess in formal compliance with the requirements of the charter, or of others to be contained in the validating act; and for the reason given above, that it is within the power of the legislature to adopt and affirm acts of a municipality irregular merely, and to establish the result thereof, though it has been informally reached by the municipal authorities. It is not meant to assert that the legislature may, by a retrospective statute, validate municipal action that trenches upon vested rights, or affects substantial equities; but to declare that where there was

municipal jurisdiction of the subject-matter, and the defects in the exercise of it are irregularities in the mode of procedure, it is within the legislative discretion to adopt and confirm the result of the informal act, or to send back the matter to the municipality, with power to begin again and go forward in the mode prescribed by the original authority. Where it has been questioned whether this discretion existed, it will be found that there was lack of primary jurisdiction, or a state of facts different from that in the case before us. (See, also, the words of JOHNSON, Ch. J., in *Bank of Rome* v. *Village of Rome,* 18 N. Y. 38.)

Second. That the act is not in accord with section 16 of article 3 of the State Constitution, that no private or local bill shall embrace more than one subject, and that the subject shall be expressed in the title. Many decisions have been made upon this clause in the Constitution. It has been found impracticable to lay down a precise rule that will always determine what bills, and the titles thereof, come in conflict with it. It has been left for a consideration of each case to ascertain whether the act is valid or not. The title of the act is what is in this instance suggested as defective; and we have given it above *verbatim.* It is claimed that it does not express the subject, inasmuch as it does not name this roadway. It would have been more definite had it done so; but it does advise all interested, that the purpose of the bill is to legalize proceedings of the common council of the city of Buffalo; not all of its proceedings, but certain of them. We do not propose to discuss the question abstractly. As there are adjudications that have disposed of like titles, they should be followed. The titles to the bills which were considered in *Connor* v. *The Mayor,* (1 Seld. 285); in *In re Volkenning* (52 N. Y. 650); in *In re Morgan* ( 50 id. 504); in *The People* v. *Briggs* (id. 553), were as general as this, or more so; some of them like it in phraseology. We consider those cases as sustaining the validity of this act in this respect.

Third. It is claimed that the act is against section 18 of article 3 of the State Constitution, which declares that the legis

lature shall not pass a private or local bill in case of the laying out, opening, altering, working or discontinuing roads, highways or alleys. This clearly was not a bill for laying out, opening, altering or discontinuing a road. It may be doubted whether this act, supposing it one to originate the work, is in conflict with this provision of the Constitution. (*The People ex rel.* v. *Banks*, 67 N. Y. 568, 574.) When viewed as an act not to originate the work, but as one to heal defective proceedings under the provisions of a city charter that have given ample authority, it is clear that it does not run counter to the constitutional inhibition.

Fourth. It is claimed that the *locus in quo* was not a public street or highway; that it was private property, and that the city of Buffalo had no right to have a road thereon, nor could the legislature give authority therefor, in the manner done by this act. This contention rests upon the position that upon the dissolution of the Buffalo & Hamburgh Turnpike Company, the lands used by that corporation for its way reverted to the former owners thereof or to their grantees. That corporation had the power to purchase, hold and convey real estate for its use, which was necessary to fulfill the end and intent of the incorporation of it. That intent and end was to make a good and sufficient turnpike road from Buffalo to the town of Hamburgh ; and the lands in question were needful to have to that end, and were used therefor. The title to them was vested in the corporation by a quit-claim deed from the individual once owning it; and that deed conveyed the fee for the uses and purposes of a road. Beyond specifying the use and purpose of a road, the deed had in it no conditions or limitations. The lands thus conveyed, by the legal extension of the boundaries of Buffalo, came to be within the corporate limits thereof. That turnpike company, sometime before this matter arose, ceased to keep up a road within those limits, and in intent and fact, though not in technical compliance with provisions of law, surrendered the way therein to the defendant, which took the care, in fact, of the way as one of the public streets of the municipality ; and it has always been used as a

thoroughfare; by which we understand that it has, since it was laid out as a road by the turnpike company, been kept open for the public use as a way of common passage, in all the modes of ordinary travel.    If the lands had been conveyed absolutely to the turnpike company, they would not have reverted to the grantors or their successors in interest.    (*Heath* v. *Barmore*, 50 N. Y. 302.)   So that if there has been a *reverter* in the case in hand, it has resulted from the deed having been for the use and purposes of a road.   Though the appropriation or conveyance of lands may be for a public use, and it be so expressed in the law authorizing the appropriation, or in the deed conveying them, that does not prevent the passing of the absolute title so as to cut off all right of *reverter* to the former owner or to the grantor.   See *Sweet* v. *Buff.*, *N. Y. & Phil. R. R. Co.*, 79 N. Y. 293, where it is said: "The purpose expressed does not qualify the estate taken, but simply regulates and defines the use for which it shall be held."   It is said that a difference arises in this case from the provision in the charter of the turnpike company, that it might purchase and hold real estate for the use of the corporation and for no other purpose whatsoever. We think that this phraseology does not vary the principle. The use of the corporation for the land conveyed was to make a road for the use and convenience of the public.   That was the primary and justifying purpose of the grant of the franchise.    That there was a prospect of private gain, balancing with the chance of private loss, does not take away from the prime object in granting the charter, and the object that chiefly warranted the legislature in making the grant.   The use of the corporation was a use for the public need and accommodation.   So the acquisition of the lands was for a public use. For that use by it, the public was to pay in tolls that which would keep the way in repair, and might leave a surplus in the corporate treasury to be divided in private gain or income to the corporators.   But we may not forget or ignore that it was for a public use that the corporation was created and the powers it had were conferred.   Whatever became of the ownership of the roadway in the case in hand, we think it did

not revert to the grantors of the turnpike company or the assignees of those grantors. There was, therefore, no private right of individuals to conflict with the control of the road-way taken by the city. The turnpike company had in fact given up its right in the road to the city, and its corporate existence had been dissolved by the legislature. That right was one to make and maintain a way for public travel. When the legislature passed the law of 1838 (chap. 262, § 1) by which it is declared that when any turnpike corporation shall become dissolved, or the road discontinued, it shall become a public highway, if the act operated upon this roadway, it but gave what was held for a public use under one form, and with one class of conditions, to a like public use under another form, and with a class of conditions not more onerous upon the public. Assuming that there was no provision in the charter of the turnpike company by which legislative power was reserved to alter, repeal or amend it, and as the charter was given before the Constitution of 1846, and assuming that it was before the Revised Statutes (1 R. S. 600, § 8), it is contended by the plaintiffs that the law of 1838 cannot apply to this roadway, the property of this turnpike corporation. Granting the assumption, (though it is not well founded, see Laws of 1826, chap. 170, § 5, page 161, and Laws of 1830, chap. 11, pp. 9, 10, §§ 6, 7), that may be so long as any rights of that corporation remained to be affected by that legislation. But it was a legislative declaration of the effect of a discontinuance of the use of a turnpike road by the corporation itself, which had been formed to make the road and keep it up for public use. As by the operation of the deed the title had gone from the former private owners, when the turnpike company ceased to exist and so no longer had right in the roadway, when the franchise of the turnpike company went back to the State that had given it, the public interest in the road did not cease; the right to go to and fro over it remained, free from the burden of paying tolls, and free from the duty to make compensation afresh to those once the private owners of the lands. No question is raised but that the disso-

lution of the turnpike corporation was lawfully made by the legislature. It might at the same time, as part of the same act, have declared that the road should remain a common highway, the public use to continue, and the way to be kept up, no longer by money derived from tolls, but by the means used for the keeping in repair the other common ways of the State. (*The State* v. *Maine*, 27 Conn. 641.) It is the same, that there being to the knowledge of the legislature on the statute book, a general act to the same end, it chose to dissolve the turnpike company and let the general act fall upon the roadway, instead of particular provisions in the statute of dissolution. Nor is the case different in result and the principles that govern it, when the roadway of a turnpike company is within the bounds of a city instead of those of a township. The street of a city is a way for public use, as is the road in a town. The public use continues in the one case as in the other, under the different conditions that go with a city street. It is said that the turnpike company was bound to keep up the road without compensation, and that now, if it is held to be a city street, the keeping of it in repair will be a burden upon private persons, laid on by assessments greater than the former mode of use would have put them to. It is not exact to say that the turnpike company had no compensation for keeping up the way. The compensation to it was by the tolls it took. The cases recognize this mode as only an alternative for the labor on the common highway that may be exacted from the citizen, and the same in principle. The assessment for the more costly repairs of a city street differs from the latter in degree, but not in kind. The dweller in the city gets his return for the greater charge to which he is put by the greater ease, convenience and advantage he has in life and business, and in theory at least, though from the daily instances before us we must confess that it limps painfully in practice, the burden of street assessments is equalized in the long run and over the municipal space.

A criticism is made upon the wording of the act of 1875, and it is urged that it fails to supply the omissions of the common council and other officials of the city. It is to be

confessed that there has been throughout the matter an un-
happy lack of precision, a non-observance, if not a disregard
of the requirements of statute law already enacted, and a con-
fused notion of what it was needful to express in the framing
of statute law to be enacted. But through it all there is evi-
dent the intent of the legislature to make legal this irregular
assessment. It ratifies and confirms the proceedings of the
city in the matter of the repairs of the " Hamburgh turnpike."
Now, those proceedings were to direct the city engineer to
prepare a plan and specifications for making the repairs; a
declaration of an intention to make them; a direction to ad-
vertise for proposals to do the work, based on quantities and
specifications to be exhibited; a resolution ordering the repairs
to be made in accordance with that plan, and that a contract
be made; an order to the city assessors to assess the expenses
upon the lands deemed to be benefited thereby; a resolution
fixing the expense at a definite sum named; and a confirma-
tion of an assessment-roll. These being ratified and con-
firmed, there was sufficient exercise of legislative power to
order the work to be done. The act also ratifies and confirms
the action of the respective officers of the city in relation to the
matter. Now it appears that the city assessors made, and the
city attorney filed in the office of the city clerk an assessment-
roll of a local assessment in accordance with that plan. This
action being ratified and confirmed, there was enough official
action to make the assessment a valid claim upon the persons
and the localized property specified in the roll. That what
the council and officers did not, is not specifically supplied by
the act, matters not. What they did is ratified and confirmed,
and made sufficient for the end sought, that is, the laying a
collectible local assessment. If there had been no omissions,
there would need have been no act. And what was done is
made by the act to stand instead of what was omitted. It is
not doubted but that the city had the power under the charter,
*ceteris paribus,* to make this repair in all the details of the
plan of the city engineer, and to raise the money to pay there-
for by local assessment. It reached a declaration, by proper

municipal legislative authority, that the assessment be laid. It reached it by erring steps. The legislature ratified those steps and confirmed the end reached. All that was done by the common council and by city officials was done to produce a valid local assessment. It did produce an invalid one. But all that was done was ratified and confirmed by the legislature, that is, made legal toward the end sought. Hence the steps taken were made by the act the proper steps toward that end, and hence the end sought, a valid local assessment, was reached. The clause in the act, that they shall have the same force and effect as if the contract had been directed by a vote of three-fourths of all the members elected to the common council, does not mean that they shall have no other effect. They are all ratified and confirmed, and full effect is given thereby. And an effect is particularized that this ratification is to have upon the contract. This latter clause is surplusage; for all being confirmed, it needs not to single out one act and give a special confirmation to that.

We think, then, that this position of the appellants is not tenable. If the public use sought to be put upon the lands was different in its nature, like that of a railway laid upon a highway or street, or if there had been an abandonment of the road, and a discontinuance of the use of it as a way for public travel, there would be a different case presented, and authorities cited by the appellants would then demand consideration. But here the first purpose of a way for public use has been all the while kept up, and no different use of it has been imposed upon the lands. The public rights have never been given up.

These views cover the ground taken in the points of the plaintiffs, and they lead to an affirmance of the judgment of the court below.

All concur; except RAPALLO, J., absent at decision, and FINCH, J., absent at argument.

Judgment affirmed.