THE WROUGHT-IRON BRIDGE COMPANY OF CANTON, STARK COUNTY, OHIO, RESPONDENT, v. THE TOWN OF ATTICA, APPELLANT.

*When the subject of a local act is sufficiently expressed by its title, to satisfy the requirements of section 16 of article 3 of the Constitution — an act providing for the payment for a bridge is not within section 18 of said article.*

Pursuant to the terms of a contract made by the commissioner of highways of the town of Attica with the plaintiff, the latter furnished the materials and constructed a bridge upon the line of a highway over the Tonawanda creek, in that town, which was completed, and accepted by the commissioner, in February, 1885, and has since been used by the public. Subsequently, and in February, 1885, the auditing board of the town audited and allowed the account of the commissioner for the contract-price of the bridge, and also for eighty-nine dollars and sixty-one cents as the expense of removing the old bridge, which was removed by the plaintiff upon the promise of the commissioner to pay the expense of so doing. In an action, brought by the plaintiff against the successor of such commissioner, who refused to pay for the work, the plaintiff's complaint was finally dismissed upon the ground that the commissioner of highways, as such, had no power to make the contract,

In 1887 the legislature passed an act entitled "An act to legalize the acts and proceedings of the town board, and the town board of auditors, of the town of Attica, Wyoming county, in relation to the erection of a certain iron bridge over the Tonawanda creek on Main street, in the village of Attica, in said town, and the acts and proceedings of the annual town meeting of said town, held on the 22d day of February, 1885, in relation to said bridge, and the acts and proceedings of George D. Miller, as highway commissioner of said town, in relation to said bridge."

By sections 1, 2, 3 and 4 of this act the proceedings of the electors and the commissioner of highways of the town, leading to and resulting in the contract, and of the town board in auditing the commissioner's account, etc., were, in terms, *seriatim*, legalized and confirmed. By the latter part of section 4 it was declared that the provisions of that act and the preceding sections were for the purpose only of enabling the plaintiff to recover from the town the value of the bridge, the cost of the removal of the old one and interest, as specified in the fifth section, which provided that nothing in the act contained should be so construed as to require the town to pay the amount audited by the town board of auditors for the contract-price of the bridge constructed, or for the taking down of the old one, but that the plaintiff might maintain an action against the town to recover a fair and reasonable compensation for such work, with interest from the time of the completion and acceptance of the work.

*Held*, that the act, though local in character, did not violate section 16 of article 3 of the Constitution, providing that no private or local bill shall embrace more than one object, and that that shall be expressed in the title. (DWIGHT, J., dissenting.)

*Matter of Mayor of New York* (99 N. Y., 569, 577) distinguished.

That said act did not violate section 18 of article 3 of the Constitution, forbidding the passage of private or local bills, "providing for building bridges," as the act did not provide therefor, but only for the payment for a bridge already built.

APPEAL from a judgment entered upon the verdict of a jury rendered at the Wyoming Circuit, on November 23, 1887, in the county of Genesee, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*George U. Loveridge*, for the appellant.

*Tyrrell & Ballard*, for the respondent.

BRADLEY, J.:

Pursuant to the terms of a contract made by the commissioner of highways of the town of Attica with the plaintiff, the latter furnished the materials and constructed a bridge upon the line of a highway over Tonawanda creek in that town. The bridge was completed, and by the commissioner accepted, in February, 1885,

and has since then been used by the public.   The contract-price for the materials and construction of the bridge was $3,975.   The plaintiff also removed the old bridge there, upon the promise of the commissioner to pay the expense of doing it.   Subsequently, and in February, 1885, the auditing board of the town audited and allowed the account of the commissioner for the contract-price of the bridge, and eighty-nine dollars and sixty-one cents as the expense of the removal of the old bridge.   After the election of the successor in office of the commissioner who made the contract with the plaintiff, the constituted authorities of the town refused to provide for or make payment to the plaintiff for the work as provided by the contract.   And in an action brought against such succeeding commissioner upon it, the plaintiff's complaint was finally dismissed.   The situation appeared to be such that there was no liability of the officer to pay the plaintiff, because it was not within the power of the commissioner of highways, as such, to make the contract.

And for that reason the legislature passed an act, entitled " An act to legalize the acts and proceedings of the town board, and the town board of auditors of the town of Attica, Wyoming county, in relation to the erection of a certain iron bridge over the Tonawanda creek on Main street, in the village of Attica, in said town, and the acts and proceedings of the annual town meeting of said town, held on the twenty-second day of February, eighteen hundred and eighty-five, in relation to said bridge, and the acts and proceedings of George D. Miller, as highway commissioner of said town, in relation to said bridge." (Laws of 1887, chap. 205.)

By sections 1, 2, 3 and 4, the proceedings of the electors and commissioner of highways of the town, leading to and resulting in the contract, and of the town board in auditing the commissioner's account, etc., were in terms, *seriatim*, legalized and confirmed.   And by the latter part of section 4, it was declared that the provisions of that and the preceding sections were for the purpose only of enabling the plaintiff to recover from the town the value of the bridge, the cost of the removal of the old one and interest, as specified in the fifth section, which provided that nothing in the act contained should be so construed as to require the town to pay the amount audited by the town board of auditors for the contract-price of the bridge constructed, or for taking down the old one, but that the plaintiff might

maintain an action against the town to recover a fair and reasonable compensation for such work, with interest, from the time of the completion and acceptance of the bridge.

This act was effectual to support a liability on the part of the town, and the recovery, unless the power for that purpose was denied to the legislature by the Constitution. (*Town of Guilford* v. *Supervisors of Chenango Co.*, 13 N. Y., 143 ; *Town of Duanesburgh* v. *Jenkins*, 57 id., 177.) But, as the act is local in character, it is contended that it is violative of the provision of the Constitution that no private or local bill shall embrace more than one subject, and that shall be expressed in the title. (Art. 3, § 16.) The terms of the title, as expressed by it, indicate a purpose to legalize the proceedings had in the town in relation to the bridge. All those proceedings had some relation to the means employed to procure the construction of the bridge, and to provide for payment of the expense of it. They are parts of a single subject, and the title is free from objection. The contention, however, is that the provisions of the act embrace more than one subject, and are extended beyond the purport of the title, because it provides not only that such proceedings be legalized and confirmed, but makes the value rather than the contract-price the measure of compensation and liability for the work. It is true that simply legalizing the proceedings would apparently have the effect to give validity to the contract made by the commissioner with plaintiff, and charge liability upon it to the latter, and for that reason there may seem to be some apparent force in the contention that the title is not sufficiently broad to embrace within its meaning a purpose to charge upon the town any other or different measure of liability for compensation to the plaintiff than that furnished by the terms of the contract. But for the purposes of the question presented, the import of the title does not require a construction so restricted. The subject of the title has relation to the bridge and the proceedings taken by the authorities of the town to procure its construction resulting in the employment of the plaintiff to furnish it, and with a view to payment therefor. And the provisions of the act so far legalize and confirm those proceedings as to render the employment valid and entitle the plaintiff to recover and receive from the town the value or reasonable compensation for the erection of the bridge, and for taking down the old one.

The fact that the measure of liability and compensation given by the act is a qualification to that extent of the proceedings had pursuant to which the work was performed is not a departure from the subject referred to in the title. The purpose for which the title is required to express the subject of a private or local bill is not to furnish by it the details of the act, but to call attention to the matter to which it relates, for the details of which reference must be had to the provisions of the bill. The question is not one of degree of particularity, but whatever comes within the purview of the subject expressed in the title is permissible in the act. (*Brewster* v. *City of Syracuse*, 19 N. Y., 116; *Tifft* v. *City of Buffalo*, 82 id., 204; *People ex rel. Rochester* v. *Briggs* 50 id., 553; *Matter of P.P. and C. I. R. R. Co.*, 67 id., 372; *Kerrigan* v. *Force.*, 68 id., 381; *Neuendorff* v. *Duryea*, 69 id., 557; *Matter, of Met. Gas Light Co.*, 85 id., 526.

But it is urged that the title of the act is such as to exclude from its import any indication of purpose to furnish a measure of liability of the town, other than that which the contract, as made, purported to create, and that in view of the provisions, in that respect, of the act, it was deceptive and misleading, and, therefore, cannot survive the test applicable to such cases declared *In Matter of Mayor, etc., of New York* (99 N. Y., 569, 577). But the title of the act in question is not obnoxious to the rule of construction and effect, there announced, as that upon which validity depends. All the provisions of the bill are within and have relation to the general subject of the title. The question has frequently been considered, and the courts are not inclined to rigidly criticise the manner of expressing the subject in the titles and the purposes contained in the provisions of bills, with a view to distinguish the latter from the former, as appears by the cases before cited, from the doctrine of which, in that respect, the subsequent cases have not departed. While the subject of the bill must be, the purposes of the bill need not be, expressed in the title, but may be found only in the provisions of the act. There is nothing in this title which, in terms or necessary effect, exclude from the subject expressed in it the consequences to be provided as the result of the confirmation of the proceedings legalized. The title merely fails to indicate the details in that respect. The provisions of section 4 qualify the effect of such con-

firmation before therein expressed, and those of section 5 declare the consequences of it.

They have relation to the compensation of the plaintiff and the liability of the town for the work of construction of the new bridge and for the removal of the old one. This is within the details of the subject of the title. (*People ex rel. Comrs.* v. *Banks*, 67 N. Y., 568.) The reason, as represented by the defendant's answer, for the refusal to pay, which produced the legislative act and its provisions making the value the measure of liability, was the alleged fact that the contract-price was in excess of the value of the work. And it may be observed that the recovery was less than the amount (with interest upon it), which the commissioner, by the contract, undertook to pay the plaintiff. This right of recovery was properly made dependent upon the legislative confirmation of the employment of the plaintiff by the commissioner and as the result of it. The act does not seem to come within the inhibition of the constitutional provision before mentioned. Nor was the power to pass the act denied to the legislature by section 18 of article 3 of the Constitution. It did not provide for building any bridge, but merely charged the town with the duty to provide for the payment, and to pay for one already constructed by the plaintiff, upon employment by the commissioner, pursuant to proceedings defectively or ineffectually taken, and had for that purpose to create liability for the work. This legislation came within neither the letter or manifest purpose of such constitutional restriction of legislative power. Nor is it violative of any other provision of the Constitution. (*Jones* v. *Chamberlain*, 109 N. Y., 100.)

There was no error in the reception of the evidence of the proceedings of the constituted authorities of the town referred to in the enactment in question, and which were legalized, so far as they were, by it. The evidence was not improperly received to show upon what the legislative act of ratification was founded. The case presents no error in the rulings of the trial court.

The judgment and order should be affirmed.

BARKER, P. J., and HAIGHT, J., concurred.

DWIGHT, J. (dissenting):

The action was brought under the provisions of chapter 205 of the Laws of 1887, and the principal question here discussed is that of the constitutionality of that act of the legislature. The plaintiff is a corporation located at Canton, in the State of Ohio, and engaged in the manufacture and erection of wrought-iron bridges. The defendant is a town in the county of Wyoming. In July, 1884, the town board of Attica, upon inspection, condemned the existing bridge, by which a highway of the town was carried over the Tonawanda creek, as unsafe for travel ; and, by resolution, authorized the commissioner of highways of the town, one George D. Miller, to procure the construction of a new iron bridge, in place of the one so condemned, at the expense of the town. In pursuance of such resolution, the commissioner, on August 7, 1884, entered into a contract with the plaintiff, by which the latter was to furnish the materials for and construct and erect the superstructure of such bridge, according to a plan and specifications annexed to and made a part of the contract ; the work to be completed on or before a day named at the price of $3,975, to be paid on the completion of the bridge ready for travel. Subsequently, by a further agreement between the commissioner and the plaintiff, the time for the completion of the bridge was extended to include the month of February, 1885, and it was also agreed that the plaintiff should remove the old bridge, the actual expense of such removal to be paid by the town. The bridge was completed in February, 1885, and was accepted by the commissioner, on behalf of the town, and has ever since been used as a part of its highways. On the twenty-first day of that month the account of the commissioner, for the moneys so agreed to be paid to the plaintiff for the removal of the old bridge and the construction of the new one, was audited by the town board at the sum of $4,064.61. At the annual town meeting, held February 23, 1885, the electors of the town voted to authorize the supervisor to raise the amount so audited, by procuring the same to be included in the tax levy of the town, or to arrange for an extension of the time of such payment and, in that case, to give to the plaintiff the obligations of the town to secure such payment, with interest. A new commissioner of highways was elected at the same annual town meeting. On demand, he refused payment of the amounts so audited

as due to the plaintiff, and on the 3d day of October, 1886, an action in this court was commenced by the plaintiff against him, as such commissioner, to recover such amount. In that action judgment was finally rendered dismissing the plaintiff's complaint, on the ground that Miller, the commissioner of highways, had no authority to make the contract mentioned, and that such contract was not binding upon his successor, the defendant in that action. Thereafter, on the 25th of April, 1887, the legislature passed the act in question, which is chapter 205 of the laws of that year.

The title of the act is as follows: "An act to legalize the acts and proceedings of the town board and the town board of auditors of the town of Attica, Wyoming county, in relation to the erection of a certain iron bridge over the Tonawanda creek, on Main street, in the village of Attica, in said town, and the acts and proceedings of the annual town meeting of said town, held on the 22d day of February, 1885, in relation to said bridge, and the acts and proceedings of George D. Miller, as highway commissioner of said town, in relation to said bridge." The principal objection made to the act is that it violates the provisions of section 16 of article 3 of the Constitution of the State, viz.: "No private or local bill * * * shall embrace more than one subject, and that shall be expressed in the title." A reading of the act shows that the sections 1, 2 and 3, and the first clause of section 4, conform, almost verbally, to the several divisions of the title. They purport, successively, to legalize all the acts in relation to the bridge, first, of the town board; second, of the town auditors; third, of the town meeting (the electors of the town), and, fourth, of George D. Miller, as highway commissioner of the town. The last clause of section 4 is a statement of a purpose of the foregoing provisions in the following words: "For the purpose only of enabling the Wrought-iron Bridge Company, of Canton, Ohio, to recover from said town the value of such bridge, cost of removal and interest, as hereinafter specified in the fifth section of this act." And section 5 thereupon proceeds to provide that nothing in the act contained should be construed to require the town to pay the amount audited by the town board for the contract-price of the new bridge, or for taking down the old one, but that the company which did the work may bring and maintain an action to recover "a fair and reasonable compensation for the

erection of the said bridge and for taking down the old bridge, with interest on the amount found to be such compensation from the time the said bridge shall be found to have been completed and accepted by the officers of said town." The section then goes on to provide for the collection of the judgment to be recovered, in such action, by the usual methods of taxation.

This is the whole of the act. It is undoubtedly both a private and a local bill; it seems to embrace but one subject which might be described, in general terms, as the removal of legal obstructions in the way of the collection of a debt due from the defendant to the plaintiff. The matters specified in the title are steps or details of the process for the accomplishment of that purpose, and, in this respect, the title is not open to the objection that it does not sufficiently express the subject embraced in the bill. Nor is it to be objected to the title that it does not express, in general terms, the result to be effected by those provisions of the bill which are specified in the title. That result is a consequence or corollary of the provisions mentioned. All the acts of the town board, the auditing board, the town meeting and the commissioner of highways (in respect to the building of this bridge), leading up to and including the contract with the plaintiff, being legalized and validated, it follows, of necessity, that the plaintiff may maintain an action on that contract and recover what is its due. In the laws frequently passed by the legislature legalizing the official acts of town officers, notably of justices of the peace, which lacked validity by reason of failure of the officers to qualify, or for other reasons, it has never been thought necessary to specify, either in the title or in the body of the bill, the particular acts legalized or any of the consequences of such legalization.

I have no doubt that the title of the bill in question was sufficiently comprehensive and explicit to satisfy the requirement of the provision of the Constitution above quoted, if the bill had gone no further than to legalize the acts of the several boards and officials mentioned in the title, and to declare the legal and logical consequences of legalizing those acts. But, unfortunately, this bill goes outside of the limits thus indicated, and, in its last two sections, undertakes to give to its earlier provisions an effect not only different from, but

opposed to that which belongs to those provisions and to their summary contained in the title of the bill. The legal effect of the first three and the first part of the fourth sections was to give life and validity to the contract between the highway commissioner and the plaintiff, and to entitle both parties to the enforcement of that contract according to its terms. The contract fixed the price to be paid for the new bridge at $3,975, and limited the compensation for removing the old bridge to the actual expenses incurred in doing that work. The provisions of the last clause of the fourth section, and those of section 5, undertake to abrogate the contract in respect to the price to be paid for the work, and to substitute a *quantum meruit* for the contract-price. The result would be that if, in the action contemplated by the bill, the plaintiff should succeed in establishing the fact that the new bridge was reasonably worth double the price agreed to be paid, it would be entitled to recover the double price; and on the other hand, if the proof showed that it was worth only one-half the price named in the contract, the plaintiff's recovery would be limited accordingly. Such a result as this is not expressed or suggested by the title of the bill, but is plainly at variance with the intent and purpose indicated thereby.

In the case of the *Matter of the City of New York* (99 N. Y., 569), FINCH, J., pronounces the most valuable test of conformity to the requirements of the Constitution, in the title of such a bill, to be the inquiry whether the title is so framed as to be deceptive and misleading as to the contents and purport of the bill, and he adds: " Where one reading a proposed bill, with the title in his mind, comes upon provisions which take him by surprise, which he could not reasonably have anticipated, and so both citizen and legislator are misled and thrown off their guard, it is our duty to declare the condemnation of the fundamental law." It seems clear that the title to the bill in question must be condemned under the application of the test proposed. Not only is the result declared by the later provisions of the bill not included in the statement of the title, but it is positively excluded thereby. As the bill stands, it presents the anomaly of a legislative fiat giving life and binding force to a contract originally invalid, and at the same time abrogating that contract in one of its most important provisions. If this attempt at legislation escapes the condemnation of the Constitution of the United States, as a law

impairing the obligation of a contract, it is only because the validation of the contract and the impairment of its obligation are sought to be accomplished by one and the same legislative act.

It seems quite probable that the bill, as orignally framed, contained only the provisions of sections 1, 2 and 3 and the first part of section 4. To such a bill the present title would have been appropriate; the contract would have been validated and the just and commendable purpose of enabling the defendant to pay for what it has received from the plaintiff would have been attained. If the later provisions were added for the purpose of conciliating opposition to so just a measure, it is greatly to be regretted that the title of the bill was not modified to meet the change in its provisions.

But no considerations of the desirability of granting the proposed relief, or the unreasonableness of the opposition to the claim of the plaintiff, can justify the court in lending its sanction to a clear violation of a mandate of the Constitution.

For the reasons stated, I reluctantly conclude that this judgment should be reversed; and, since, if my conclusion is correct, no change of proof can obviate the objection to the action, judgment should be directed dismissing the plaintiff's complaint. In that case the good citizens of Attica, who desire to see justice done to the plaintiff, may again invoke the power of the legislature to enable them to accomplish that object.

Judgment and order affirmed.