New York Steam Corporation, Appellant, *v.* The City of New York, Respondent.

138

(Argued May 23, 1935; decided July 11, 1935.)

*Henry L. Stimson, Chauncey B. Garver, Thomas H. Beardsley* and *Hamilton Hadley* for appellant. Chapter 815 of the Laws of 1933 is invalid because it is a special local law in its effect relating to the property, affairs or government of a specific city, and was not adopted in conformity with the provisions of section 2 of article XII of the New York Constitution. (*People ex rel. Mason* v. *McClave*, 99 N. Y. 83; *People* v. *Ahearn*, 196 N. Y. 221; *Matter of Mayor* [*Elm St.*], 246 N. Y. 72; *Adler* v. *Deegan*, 251 N. Y. 467.) The emergency in the city of New York, to meet which the act was enacted, was a fiscal emergency " relating to the property, affairs or government " of the city. It was essentially the kind of emergency which section 2 of article XII was designed to reach and protect. (*People ex rel. Metropolitan St. Ry. Co.* v. *Tax Comm.*, 174 N. Y. 417; *People ex rel. Town of Pelham* v. *Village of Pelham*, 215 N. Y. 374; *Matter of Zborowski*, 68 N. Y. 88; *Adler* v. *Deegan*, 251 N. Y. 467; *City of New York* v. *Village of Lawrence*, 225 App. Div. 1; 250 N. Y. 429.) The construction of the Home Rule Amendment at the Trial Term disregards the express language of section 2 of

article XII, frustrates the essential purpose of the Home Rule Amendment, and is at variance with the way in which the amendment has been construed by the Legislature and the courts. (*Browne* v. *City of New York*, 241 N. Y. 96.) The action of the Legislature in delegating its entire power of taxation was an unprecedented abdication of legislative authority and duty, and violated section 1 of article XII of the New York Constitution in that it delegated a power of taxation to the city of New York which was wholly unrestricted in character. (*People* v. *Adirondack R. R. Co.*, 160 N. Y. 225; *People* v. *Fitch*, 148 N. Y. 71; *People ex rel. Metropolitan St. Ry. Co.* v. *Tax Comm.*, 174 N. Y. 417; *People ex rel. Town of Pelham* v. *Village of Pelham*, 215 N. Y. 374; *Bank of Rome* v. *Village of Rome*, 18 N. Y. 38; *Kelly* v. *Merry*, 262 N. Y. 151.) The local law denies to the plaintiff the equal protection of the laws and deprives the plaintiff of its property without due process of law, in violation of section 1 of the Fourteenth Amendment of the Constitution of the United States. (*Power Mfg. Co.* v. *Saunders*, 274 U. S. 490; *Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S. 389; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400; *Royster Guano Co.* v. *Virginia*, 253 U. S. 412; *Liggett Co.* v. *Lee*, 288 U. S. 517; *Northwestern Life Ins. Co.* v. *Wisconsin*, 247 U. S. 132.) The local law unlawfully selects plaintiff to bear the burden of a special discriminatory and arbitrary tax when the purpose of the tax bears no special relation to plaintiff or its business. (*Charlotte Railroad* v. *Gibbes*, 142 U. S. 386; *People ex rel. Jamaica Water Supply Co.* v. *Tax Comrs.*, 196 N. Y. 39.)

*Darius A. Marsh* and *George D. Yeomans* for New York Rapid Transit Corporation et al., *amici curiæ*. The Legislature has no power under the State Constitution to delegate to cities blanket authority to impose taxes by local city laws. (*Matter of Hermance*, 71 N. Y. 481; *Burks* v. *Bosso*, 180 N. Y. 341; *Lantry* v. *Mede*, 127

App. Div. 557; 194 N. Y. 544; *State Board of Pharmacy* v. *Gasau*, 195 N. Y. 197; *Daly* v. *Haight*, 170 App. Div. 469; 224 N. Y. 726; *Matter of Holzworth*, 166 App. Div. 150; 215 N. Y. 700; *Matter of Robinson*, 203 N. Y. 380; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *People* v. *Rathbone*, 145 N. Y. 434; *Newell* v. *People*, 7 N. Y. 9; *People ex rel. Griffin* v. *Mayor*, 4 N. Y. 419; *People* v. *Fitch*, 148 N. Y. 71; *People* v. *Adirondack Ry. Co.*, 160 N. Y. 225; *People ex rel. Metropolitan St. Ry.* v. *Tax Comrs.*. 174 N. Y. 417; *Gautier* v. *Ditmar*, 204 N. Y. 20.)

*Paul Windels, Corporation Counsel* (*Joseph L. Weiner, Paxton Blair* and *Reuben A. Lazarus* of counsel), for respondent. The local law was properly adopted under the authority conferred by article XII of the State Constitution. (*Adler* v. *Deegan*, 251 N. Y. 467; *Cleveland* v. *City of Watertown*, 222 N. Y. 159; *Matter of Mayor* [*Elm St.*], 246 N. Y. 72; *People ex rel. Outwater* v. *Greene*, 56 N. Y. 466; *People* v. *Richards*, 108 N. Y. 137; *Matter of Rochester Electric R. R. Co.*, 123 N. Y. 351; *Pulitzer* v. *City of New York*, 48 App. Div. 6; *Halsey* v. *Jewett Dramatic Co.*, 114 App. Div. 420; *City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *Browne* v. *City of New York*, 241 N. Y. 96; *United States* v. *New Orleans*, 98 U. S. 381; *Matter of Braun*, 141 Cal. 204; *State ex rel. Zielonka* v. *Carrel*, 99 Ohio St. 220; *City of St. Louis* v. *Sternberg*, 69 Mo. 289; *Pacific Tel. & Tel. Co.* v. *Seattle*, 172 Wash. 649; 291 U. S. 300.) Chapter 815 of the Laws of 1933 does not violate either article III, section 1, or article XII, section 1, of the State Constitution. (*Kelly* v. *Merry*, 262 N. Y. 151; *Foster* v. *Kenosha*, 12 Wis. 616.) The local law does not deny to the plaintiff the equal protection of the laws, nor does it deprive it of its property without due process of law. (*Matter of City of New York* v. *Prendergast*, 202 App. Div. 308.)

LOUGHRAN, J. This appeal is from a judgment in favor of the defendant city of New York in an action to

recover taxes exacted from plaintiff by force of chapter 815 of the Laws of 1933 and Local Law No. 19, 1933 (Local Laws, 1933, pp. 127–135). The validity of the statute is challenged under sections 1 and 2 of article XII of the Constitution of the State. The local law is assailed under the Fourteenth Amendment of the Constitution of the United States.

The provisions of the statute, known as the Buckley Act, so far as material, are as follows:

" AN ACT to relieve the people of any city of the state having a population of one million inhabitants or more from the hardships and suffering caused by unemployment and the effects thereof on the public health and welfare, by temporarily enabling any such city to adopt and amend local laws imposing in any such city any tax which the legislature has or would have power and authority to impose; to limit the application of such local laws to the period commencing September first, nineteen hundred thirty-three, and ending February twenty-eighth, nineteen hundred thirty-four, and to limit the use of the revenue derived from such taxes to the defrayal of the cost of granting unemployment relief in any such city.

" Became a law August 29, 1933, with the approval of the Governor. Passed, on message of necessity, three-fifths being present.

" *The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

" Section 1. It is hereby declared that an emergency exists requiring the enactment of the following provisions of law to relieve the people of any city of the state having a population of one million inhabitants or more from the hardships and suffering caused by unemployment and the effects thereof on the public health and welfare and to continue their application until the twenty-eighth day of February, nineteen hundred thirty-four.

" § 2. Notwithstanding any other provision of law to the contrary, any city of the state having a population

of one million inhabitants or more, acting through its local legislative body, is hereby authorized and empowered to adopt and amend local laws imposing in any such city any tax which the legislature has or would have power and authority to impose. Such local laws shall be effective only during the period commencing September first, nineteen hundred thirty-three, and ending February twenty-eighth, nineteen hundred thirty-four, or any portion of such period. A tax imposed hereunder shall have application only within the territorial limits of any such city and shall be in addition to any and all other taxes. * * *

" § 3. A local law adopted pursuant to the provisions of this act shall provide that all revenues collected thereunder shall be paid into a special fund to be established by the chief fiscal officer of any such city and shall be used exclusively for the following purposes: (a) to defray the cost of granting unemployment home and work relief, and (b) to defray the annual cost of the interest on certificates of indebtedness issued in the first instance to obtain funds necessary to provide unemployment home and work relief, and to redeem such certificates of indebtedness. * * * "

(1) Because this legislation was passed without the concurrent action of two-thirds of each house of the Legislature, plaintiff would have it condemned as a violation of the Home Rule Amendment of the Constitution of the State (Art. XII, § 2). By that section it is provided: " The Legislature shall not pass any law relating to the property, affairs or government of cities, which shall be special or local either in its terms or in its effect, but shall act in relation to the property, affairs or government of any city only by general laws which shall in terms and in effect apply alike to all cities except on message from the governor declaring that an emergency exists and the concurrent action of two-thirds of the members of each house of the Legislature."

The question is whether relief of unemployment so far relates to the property, affairs or government of cities that the act must be held to be special or local in effect. The field of its application is defined as any city of the State having a population of one million inhabitants or more. To that extent it is general both in terms and in effect, but the spirit of the Home Rule article is not satisfied by such a form of words alone. (*Matter of Mayor, etc., of New York* [*Elm St.*], 246 N. Y. 72.) It is only matters of paramount State concern, as discriminated from those of dominant local significance, that .are not subject to the requirements of section 2 of article XII of the Constitution. (Art. XII, § 4; City Home Rule Law [Cons. Laws, ch. 76], § 30; *Adler* v. *Deegan*, 251 N. Y. 467; *Robertson* v. *Zimmermann*, 268 N. Y. 52.) However hard the problem of classification may be in other situations (McGoldrick on Law and Practice of Municipal Home Rule, pp. 317–351; McBain, 37 Political Science Quarterly, 655), choice of the category in this instance is, we think, free from doubt. It is common knowledge that widespread unemployment has undermined standards of living to a degree which threatens the economic stability of State and nation and affects the welfare of all the American people. (*Darweger* v. *Staats*, 267 N. Y. 290.) More than half the population of the State live in the city of New York. " Anything that affects the health and the welfare of the city of New York, touches almost directly the welfare of the State as a whole." (CRANE, J., in *Adler* v. *Deegan*, *supra*, pp. 477, 478.) " If the moral and physical fibre of its manhood and its womanhood is not a State concern, the question is, what is? " (CARDOZO, Ch. J., id. p. 484.)

It is clear, we think, that the Buckley Act is not obnoxious to the letter of section 2 of article XII of the Constitution. Nor do we apprehend that the act does any violence to the spirit of that section. The city of New York is not thereby commanded to relieve unemployment or to

raise taxes to that end. What shall be done in that regard is left to the determination of the local authority. There has been no encroachment upon the conception of the autonomy of the city as a State within a State.

The non-obligatory aspect of the statute persuaded the trial court to sustain it upon a view of section 5 of article XII of the Constitution which we are not prepared to accept. By that section it is provided: "The Legislature may by general laws confer on cities such further powers of local legislation and administration as it may, from time to time, deem expedient." At the Trial Term the phrase " general laws " in this section 5 was interpreted in its former sense of an act which, although local in effect, was in terms applicable to localities described as a class. (*Matter of Henneberger*, 155 N. Y. 420; *Matter of Mayor, etc., of New York* [*Elm St.*], *supra*.) Upon that construction it followed that the Buckley Act was a valid enlargement of the power of local legislation in the city of New York, and the Trial Term so held. The view taken by us renders review of this reasoning unnecessary. We leave open the question whether, in an affair of controlling local concern, legislation under section 5 of article XII of the Constitution must apply alike to all cities, unless enacted in accordance with section 2.

(2) The Legislature for the first time has here conferred upon a municipal corporation authority to enter the field of indirect or excise taxation. (Cf. General City Law [Cons. Laws, ch. 21], § 20 [4]; Tax Law [Cons. Laws, ch. 60], § 3, as amd. by L. 1933, ch. 470, § 1.) Plaintiff accents the consequent reduction of sources of revenue open to the State itself and the resultant harassment of the taxpayer by more complex methods of assessment and less summary remedies for review. (See Report of the State Tax Commission, 1934, Legislative Documents, 1935, No. 11, pp. 6, 7.) All this is held up to our imagination against a background of supposed waste and extravagance

in municipal affairs as predicting the ultimate collapse of the State government.

It may be assumed that a novel situation is thus of serious import, for the assumption cannot change the essential nature of the issue under the constitutional provisions invoked upon this branch of the case. That issue is one of legislative power " to provide for the organization of cities and incorporated villages," a power limited only by the exhortation that it be exercised " to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and in contracting debt by such municipal corporations." (Const. art. XII, § 1.) The exhortation is itself a tacit recognition that municipal corporations have the traditional functions to which it is addressed. Those functions are not less extensive than the necessities of government as declared by the Legislature in the exercise of a discretion committed to it by the Constitution.

It is true that there is to be found in the Buckley Act neither limitation in respect of the character or rate of the taxation authorized, nor restriction in respect of persons, business or property within the city of New York to be subjected thereto. The terms of the act, however, do confine its operation in point of time and of specific public use of revenue to be derived. The State has here empowered its agent, the city of New York, during a fixed period, to experiment in taxation for a State purpose which is also so much a matter of local concern that the city authorities undoubtedly have unequaled knowledge and capacity to dispatch it. Broad and unprecedented as is the license so conferred, we are without jurisdiction to circumscribe or modify it. (*Bank of Rome* v. *Village of Rome*, 18 N. Y. 38; *Bank of Chenango* v. *Brown*, 26 N. Y. 467; *Tifft* v. *City of Buffalo*, 82 N. Y. 204; *Kelly* v. *Merry*, 262 N. Y. 151, 160; Dillon on Municipal Corporations [Vols. 1 and 4; 5th ed.], §§ 74,

1375, 1376; McBain on The Law and Practice of Municipal Home Rule, p. 52.)

(3) Subject to the restrictions laid down in the Buckley Act, Local Law No. 19 provides:

" § 3. Imposition of excise tax or license fee. Notwithstanding any other provision of law to the contrary, for the privilege of exercising its corporate franchise, or of holding property, or of doing business in the city of New York, during the period commencing September first, nineteen hundred thirty-three and ending February twenty-eighth, nineteen hundred thirty-four, every corporation, company, association, joint stock association, copartnership and/or person, their lessees, trustees or receivers appointed by any court whatsoever, doing business in the city of New York and subject to the supervision of either division of the public. service commission during such period, shall pay to the comptroller of the city of New York for such privilege an excise tax or license fee which shall be equal to one and one-half per centum of its gross monthly income for the period September first, nineteen hundred thirty-three to February twenty-eighth, nineteen hundred thirty-four. Such tax or fee shall accrue and be paid and collected at the end of each month. Such tax or fee shall be imposed for the period beginning September first, nineteen hundred thirty-three and ending February twenty-eighth, nineteen hundred thirty-four, and shall be in addition to any and all other license fees and/or taxes imposed by any other provision of law and shall be paid at the time and in the manner hereinafter provided."

The objections to this law amount, in one form or another, to the claim of unconstitutional discrimination depriving plaintiff of the equal protection of the laws. It is not denied that classification for taxation presupposes a group specially taxed. It is not asserted that the Fourteenth Amendment forbids selection among businesses for subjection to a State excise tax, if determined

by some reasonable policy of differentiation, and all in the same class have equality. No objection is advanced to a gross receipts tax as such. Complaint is made that plaintiff also pays a property tax and franchise taxes based in part on income, but protest is not made that the aggregate runs to confiscation. The objections come down to the point that there is no reason for putting businesses like that of plaintiff in a class by themselves for the purposes of revenue for unemployment relief.

In our opinion reasons justifying that separation are apparent. Plaintiff is one of a group — those subject to supervision by the Public Service Commission — that, because of the public service nature of their respective businesses, are accorded a degree of protection against competition and other advantages over the general business community. This common character of the group is, we think, a valid basis of classification for the purposes of this tax. *Quaker City Cab Co.* v. *Pennsylvania* (277 U. S. 389) does not decide the contrary. In that case a similar tax was laid on every transportation company owning or operating in the State any device for the transportation of passengers, but that tax or an equivalent was not imposed on others engaged in competitive public service. The distinction was held to be based only on the corporate character of the taxpayer in violation of the equal protection clause of the Fourteenth Amendment. Again, in that case it was said that the tax was one that could be laid upon receipts belonging to others quite as conveniently as upon those of a corporation. The larger control exerted over public service undertakings simplifies enforcement of a tax upon them, a consideration which the taxing authority here was not bound to ignore in a fiscal crisis.

We conclude that this tax was not imposed through merely arbitrary or accidental classification and that it is not invalid under the Fourteenth Amendment. (See *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78,

79; *Quong* v. *Kirkendall*, 223 U. S. 59; *Fort Smith Lumber Co.* v. *Arkansas*, 251 U. S. 532; *White River Lumber Co.* v. *Arkansas*, 279 U. S. 692; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8, 21, 22.)

The judgment should be affirmed, with costs.

CRANE, Ch. J. (concurring). If chapter 815 of the Laws of 1933 deals with the property, affairs or government of the city of New York, it is unconstitutional, as it was not passed on a message from the Governor declaring that an emergency exists, and, with the concurrent action of two-thirds of the members of each house of the Legislature. Neither is it such a general law as is described in section 2 of article XII of the Constitution: "The legislature * * * shall act in relation to the property, affairs or government of any city only by general laws which shall in terms and in effect apply alike to all cities * * *." This act is not such a general law as it does not apply to all cities. Not having been passed by a two-thirds vote of the Legislature, and not being a general law which in terms and effect applies to all cities alike, nothing can save it except the conclusion that it does not apply to the property, affairs and government of New York, within the meaning of those words as used in the Home Rule provision.

Section 5 of article XII reads as follows: "The legislature may by general laws confer on cities such further powers of local legislation and administration as it may, from time to time, deem expedient." This is not inconsistent with section 2, for if the general law conferring on cities further power òf legislation and administration pertains to the property, affairs and government of a city, it must be not only general in name but general in effect. This court has so held in *Matter of Mayor, etc., of New York (Elm St.)* (246 N. Y. 72, 76); *Robertson* v. *Zimmerman* (268 N. Y. 52).

We are of the opinion that this law comes within the reasoning and ruling of *Adler* v. *Deegan* (251 N. Y. 467),

and that it pertains to State matters as distinguished from the property, affairs and government of the city of New York. All recognize that there are many functions performed by a city which are duties resting upon the sovereign State and in which the State Legislature acts for and in behalf of the People of the entire State. We have heretofore recognized that it is difficult many times to distinguish between those matters purely local and those which are State-wide, as there are many interests which overlap. The general health of the State may be affected by the locality, and this is the basis for such decisions as *Adler* v. *Deegan* and *Robertson* v. *Zimmerman* (*supra*). The State as well as the nation has been seeking to alleviate the suffering caused by unemployment. Money has been contributed by Congress and by the Legislature for public works and also for the maintenance of homes and families of those who cannot get work. In the State of New York a very large part of the unemployed population is in New York city. It is largely a matter of judgment, whether the taxpayers of New York city contribute to the State as a whole, or look after their own unemployed. As to these latter the nation and State contribute as well as the city. The problem for us to decide at this stage is, whether this work of caring for the unemployed and spending the public funds in their behalf is a State affair or one that is local and pertains solely to the city of New York. We are of the opinion that the trouble is so widespread, not localized, such a matter of State interest, affecting the State and nation as a whole, that it cannot be an affair localized to the city of New York within the meaning of section 2 of article XII of the Constitution.

This act, chapter 815 of the Laws of 1933, is constitutional unless illegal for other reasons.

That the care of the poor and destitute has become a matter of State concern is emphasized by the provisions of the Public Welfare Law (Cons. Laws, ch. 42), which has

divided the State into public welfare districts. Article 1, section 2, says: " (a) A ' public welfare district ' shall mean a division of the state which is a unit for the administration of all public relief, care and support."

Article III. " § 17. Public welfare districts. For the purpose of administration of public relief and care the state shall be divided into county and city public welfare districts as follows:

" 1. The city of New York * * *

" § 18. Responsibility for public relief, care and support. A person in need of relief and care which he is unable to provide for himself shall be relieved and cared for by and at the expense of a public welfare district or the state as follows:

" * * *

" 2. Each public welfare district shall be responsible for:

" (a) The relief, care and support of any person who resides and has a settlement in its territory."

Article V defines the powers and duties of city public welfare districts, and that there shall be a city commissioner of public welfare in each city public welfare district who shall administer the public relief and care for which the city public welfare district is responsible.

Article VI, section 41, reads in part: " The taxes levied for public relief and care in a city, or in a city public welfare district, shall be paid to the city treasurer, and disbursed in accordance with the provisions of law relating to such city for the payment of verified bills and claims."

Section 46 reads: " Estimates and appropriations in city public welfare districts. The city commissioner of public welfare shall present to the mayor or other authority provided by law in such city an itemized estimate of the amount of money needed for the ensuing year for the administration of the city public welfare district and for public relief and care. The legislative body of the city

public welfare district shall appropriate the amount necessary for such purpose and shall cause taxes to be levied for the amount of such appropriation."

The care of the poor and destitute has always been a matter of public duty recognized long before this country was settled. The poor we have always had with us as well as homes and institutions for the poor. The town or county buildings and appropriations for these purposes have existed for years. Section 10 of article VIII of the State Constitution, which prohibits a county, city, town or village to give any money in aid of any individual, specifically excepts the provisions for the aid and support of its poor as may be authorized by law.

In so far, therefore, as chapter 815 of the Laws of 1933 authorizes the city to impose a tax " to relieve the people of any [such city] from the hardships and suffering caused by unemployment," it is within the general powers heretofore conferred upon municipalities for the relief of the poor, the constitutionality of which has never been questioned. To keep people from being evicted from their homes, or from suffering from hunger, in other words, to provide them with proper homes and necessary support is simply another means of relieving distress which heretofore, under different circumstances, was sufficiently met by public institutions. The former machinery and methods have proved insufficient and inappropriate for the present-day crisis.

The State, we see, has considered these matters as well as housing projects, a matter for its care and provision, using the cities, counties and other districts as its agency for this public welfare. The law which is here questioned did not deal solely with the property, affairs and government of a city; it touched State affairs and consequently was properly passed. The Home Rule provision of the Constitution did not apply.

Under the General City Law, section 20, cities are authorized to tax real estate and personal property.

Had the Legislature merely given power to the cities to look after the unemployed, without extending by implication the subjects of taxation, there could be little or no complaint as to the legality of such a law. Instead of placing the entire burden upon the real estate of the city or community, the Legislature by this act has given to the city the power to choose other classes of property for taxation. The chief objection to this method is that the Legislature should have chosen and selected the class of property to be taxed without leaving it to the city to make the selection.

We think that, within the limitations and restrictions of the act, considering the powers already given to the city as a public welfare district, the Legislature has not delegated its taxing power so as to abdicate one of its constitutional functions.

It is said, however, that section 1 of article XII, which was in the Constitution of 1846, and is still there, as amended in 1905, has not been complied with. This section reads, " It shall be the duty of the Legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and in contracting debt by such municipal corporations."

Whether in any instance the power of a municipal corporation to tax, to borrow money, to contract debts or loan its credit has been sufficiently restricted, is a question for the discretion of the Legislature, not reviewable in the courts. (*Bank of Rome* v. *Village of Rome,* 18 N. Y. 38; *Bank of Chenango* v. *Brown,* 26 N. Y. 467; *Tifft* v. *City of Buffalo,* 82 N. Y. 204, 209.) This act we are reviewing, nevertheless, does contain certain restrictions. The tax imposed pursuant to a local law is to be effective only during the period between September 1, 1933, and February 28, 1934. The moneys raised are to

be kept in a separate fund and used exclusively for relief purposes.

Thus all the objections which have been raised to these taxes, imposed pursuant to the law referred to, have been met and answered, and the judgment below should be affirmed.

LEHMAN, O'BRIEN, CROUCH and FINCH, JJ., concur with LOUGHRAN, J.; CRANE, Ch. J., concurs in result in separate opinion in which HUBBS, J., concurs.

Judgment affirmed.