In the Matter of DAVID BROWN PRINTING CO., INC.
CITY OF NEW YORK, Appellant; NEW YORK STATE DEPART-
MENT OF LABOR et al., Respondents.

Argued January 7, 1941; decided March 6, 1941.

· *William C. Chanler, Corporation Counsel* (*Sol Charles Levine, Arthur A. Segall* and *Morris L. Heath* of counsel), for appellant.

*John J. Bennett, Jr., Attorney-General* (*Jacob G. Welch* and *Henry Epstein* of counsel), for respondents.

LEWIS, J. Upon an accounting by the assignee, in a proceeding involving a general assignment for the benefit of creditors, a single point of law is in controversy between the State and the city of New York as to the relative priority of a State corporation franchise tax and certain city emergency relief taxes.

In the account filed by the assignee it appeared that the estate of the assignor consisted of accounts receivable in the amount of $503.01, against which were listed various claims including emergency relief taxes in the total amount of $119.71 filed by the city for which priority was demanded. A claim was also filed by the State Department of Labor for unemployment insurance contributions in the amount of $49.60, but as that Department made no objection to the account and did not appeal, no issue as to its claim is now before us.

The assignee's account did not list a claim by the State for the corporation franchise tax for the period beginning November 1, 1937, and we are told that no claim had been filed therefor. However, it appears that in the process of administering the estate of the assignor, the assignee had paid to the State the full amount of the franchise tax in

the amount of $27.50. The present controversy arose when, upon the settlement of the account of the assignee, the order at Special Term directed that the assignee should be given credit for the payment of the corporation franchise tax in full. The account also listed taxes due the United States, wage claims and expenses of administration which the city concedes had priority over either the franchise tax or emergency relief taxes and the payment of which exhausted the entire estate.

The challenge by the city goes to that part of the order by Special Term which in result gives priority to the corporation franchise tax over city emergency relief taxes. This result obtains because of the fact that, by approving payment to the State of the franchise tax in full, the estate of the assignor was so depleted that, after payment of certain preferred claims, there were no funds available for the payment of the city emergency relief taxes.

The city appealed to the Appellate Division from the order of Special Term, in so far as it failed to grant to the city emergency relief taxes parity with the State franchise tax. The proceeding is here, by our permission, on appeal by the city from an order of the Appellate Division unanimously affirming the order of Special Term.

Whatever may be the law in other States (see note 36 A. L. R. p. 640), the courts of New York recognize in municipal corporations a common-law right to assert a preference in support of their claims — at least where governmental functions are concerned. (*Matter of Northern Bank of New York*, 85 Misc. Rep. 594; affd., 163 App. Div. 974; affd., 212 N. Y. 608; *Matter of Atlas Television Co.*, 273 N. Y. 51, 54, 55, 57, 58; *Matter of People* [*Lexington Surety & Indemnity Co.*], 282 N. Y. 720.) In the present case the State argues that any preference to which the city is entitled is inferior to that of the State. We have recently held that there is no priority between county and village taxes. (*County of Nassau* v. *Lincer*, 280 N. Y. 662; *Village of Garden City* v. *Roeder*, 280 N. Y. 663.) The basis of those decisions casts doubt upon the assertion that at common law there is a

difference in priority between claims of the State and of the city. Both preferences depend upon the same sovereign right. However, in the case at bar we do not reach the question whether in all cases tax claims by the State and by the city are to be dealt with on a basis of parity. Here we find in the enabling act which is involved, and in the nature of the taxes imposed thereunder, evidence of an intent by the Legislature that claims by the city for emergency relief taxes should share equally with other tax claims by the State.

The emergency relief taxes, for which the city claims parity with the franchise tax due the State, were imposed by the city pursuant to Local Laws 20 and 22 of 1937 ("Local Laws of Cities in State."— 1937 [Pub. by Sec. of State], at pp. 239 and 255), which were authorized by chapter 873 of the Laws of 1934, as last amended by chapter 327 of the Laws of 1937. The purpose of these enabling acts is the same as chapter 815 of the Laws of 1933, the constitutionality of which was upheld in *New York Steam Corp.* v. *City of New York* (268 N. Y. 137). Without reference to other details of those statutes it is sufficient for our present purposes to note that those enabling acts expressly provide that revenues resulting from taxes to be levied thereunder shall not be deposited in the city's general fund but shall be deposited in a separate bank account and used solely for purposes of relief from suffering caused by unemployment.

We have held as to kindred statutes that they "were passed by the Legislature for a State purpose, public health and welfare" (*John Hancock Mut. Life Ins. Co.* v. *Pink*, 276 N. Y. 421, 426); that by such statutes the State has empowered the city of New York to act as its agent without, however, delegating its taxing powers to the extent of abdicating its constitutional function. (*New York Steam Corp.* v. *City of New York, supra*, p. 145, and see pp. 149 and 152; *John Hancock Mut. Life Ins. Co.* v. *Pink, supra*, p. 426.) We have also said that by exercising the power granted by such a statute the city of New York

" * * * has imposed a tax as sovereign and to meet a need which concerns the welfare of the State." (*Matter of Atlas Television Co., supra,* pp. 51, 57, 58.)

These rulings, which construe the various enabling acts and the Local Laws enacted thereunder by which emergency relief taxes have been levied and collected, make it clear that by imposing relief taxes the city is not exercising the ordinary taxing power with which it is endowed to meet the cost of local government. As agent for the State, and by authority expressly granted by the Legislature, the city is collecting funds to be used, not for city purposes, but solely for emergency relief which is a matter of State concern. To accomplish this end the Legislature might. well have made provision to levy and collect such taxes by State agencies already created and functioning. Had it done so, and in the absence of definite provisions as to priority, we would have no doubt that a tax thus imposed directly by the Legislature itself would have been treated on a parity with other State taxes, including the corporation franchise tax. Instead of adopting that course, however, " The Legislature for the first time * * * conferred upon a municipal corporation authority to enter the field of indirect or excise taxation. * * * The State * * * empowered its agent, the city of New York, during a fixed period, to experiment in taxation for a State purpose * * *." (*New York Steam Corp.* v. *City of New York, supra,* pp. 144, 145.) Having chosen through the agency of a city to levy and collect taxes and, to accomplish that end, having " * * * authorized and empowered [such city] * * * to adopt and amend local laws imposing in any such city any tax * * * *which the legislature has or would have power and authority to impose* * * * " (L. 1937, ch. 327, § 1, emphasis supplied), it is difficult to believe that the Legislature intended to place those taxes — the use of which is restricted to a State purpose — upon a lower level of priority than other State taxes.

In the absence of a clear statement in the enabling act which would make city emergency relief taxes inferior to

other State taxes in the matter of their priority — including corporation franchise taxes — we believe the Legislature intended to accord them parity.

There remains for consideration the argument made on behalf of the State that a corporation franchise tax is entitled to priority by virtue of section 219-c of the Tax Law (Cons. Laws, ch. 60) which declares that such a tax " * * * shall be a lien and binding upon the real and personal property of the corporation liable to pay the same until the same is paid in full." But we find in this record no evidence that the franchise tax here involved had been perfected. (See Tax Law, § 219-e.) It does not appear that the tax had been liquidated and assessed; nor is there proof that a warrant had been issued or a levy made on specific property. The most that can be said is that the statutory lien was general and inchoate. It was " * * * not so perfected or specific as to change the rule of distribution." ( *New York* v. *Maclay*, 288 U. S. 290, 292; *Matter of Lincoln Chair & Novelty Co.*, 274 N. Y. 353.) Indeed, it may well be doubted whether it was intended that even the perfected lien of a corporation franchise tax should have preference over other State claims, the priority of which has been likened to " an equitable lien." (*Marshall* v. *New York*, 254 U. S. 380, 386.) The evident purpose of section 219-c was to overcome the effect of the decision in *Wise* v. *Wise Co.* (153 N. Y. 507). (See *Marshall* v. *New York, supra*, p. 384.)

The order of the Appellate Division, in so far as it grants priority to a franchise tax over emergency relief taxes, should be modified to provide for payment of the claims for such taxes on a *pro rata* basis, with costs.

The order of the Appellate Division should be modified in accordance with this opinion, and as so modified affirmed, with costs in all courts to appellant. (See 285 N. Y. 746.)

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.