**The CITY OF NEW YORK**

**v.**

**Louis SHAPIRO and William J. Mishel doing business as Tanners Shoe Company.**

**Civ. A. No. 52–1142.**

United States District Court,
D. Massachusetts.
Dec. 20, 1954.

Joseph F. Dolan, Boston, Mass., Adrian P. Burke, New York City, Corp. Counsel, Stanley Buchsbaum, Morris L. Heath and Lester H. Marks, New York City, of counsel, for plaintiff.

Sylvan. A. Goodman, Cohen, Bernkopf, Grauman & Goodman, Boston, Mass., for defendant.

WYZANSKI, District Judge.

## A. Introduction

· The City of New York has filed a complaint against Louis Shapiro and William J. Mishel, two Massachusetts citizens, doing a partnership business under the name of Tanners Shoe Company. Jurisdiction is claimed under the diversity jurisdiction statute. 28 U.S.C. § 1332. In most general terms, the question is whether this federal court sitting in Massachusetts will enforce a New York municipal corporation's tax claims, which, on the theory advanced in Count 1, have been reduced to an administrative judgment, and, on the theory advanced in Count 2, are collectible here even if not reduced to judgment.

## B. Statutory Background

Involved are claims arising out of the tax on the use of personal property and the tax on the privilege of doing business. The State of New York authorized the City to impose both sorts of taxes. N.Y.Laws of 1934, c. 873, as amended General City Law McK.Consol. Laws, c. 21, Art. 2–B, §§ 24–a to 24–c. See New York Steam Corp. v. City of New York, 268 N.Y. 137, 197 N.E. 172, 99 A.L.R. 1157; Matter of Brown Printing Co., 285 N.Y. 47, 52, 53, 32 N.E.2d 787.

The City's enactment of the use tax is published in New York City Administrative Code, c. 41, Title M, Article 2. § M41–16.0 imposes the use tax. § M41–18.0, subd. a, provides that "Every vendor maintaining a place of business in the city and making sales of tangible personal property * * * shall * * collect the [use] tax * * * [and] shall be personally liable for the tax collected or required to be collected." § M41–20.0 requires the vendor to keep records; § M41–21.0 requires him to make returns.

§ M41–23.0 provides for the administrative determination of the use tax. "If

a return required  *  *  *  is not filed
*  *  *  the amount of tax due shall be
determined by the comptroller  *  *  *.
Notice of such determination shall be giv-
en to the person liable for the collection
and/or payment of the tax. .Such deter-
mination shall finally and irrevocably fix
the tax unless the person against whom
it is assessed  *  *  *  shall apply to the
comptroller for a hearing  *  *  *. Aft-
er such hearing the comptroller shall give
notice of his determination to the person
against whom the tax is assessed. The
determination of the comptroller shall
be reviewable for error, illegality or un-
constitutionality or any other reason
whatsoever by a proceeding  *  *  *
[in] the supreme court  *  *  *." The
remedy so provided against an erroneous
determination is made exclusive. § M41–
26.0.

§ M41–27.0 provides proceedings to
recover the tax. Subdivision a author-
izes the Corporation Counsel to bring in
any court of any State or of the United
States an action to enforce any tax, pen-
alty, or interest imposed by the title.
Subdivision b as "an additional or alter-
nate remedy" provides that "the treasur-
er may issue a warrant, directed to the
city sheriff commanding him to levy
upon and sell the real and personal prop-
erty of the vendor  *  *  *. The city
sheriff shall within five days after the
receipt of the warrant file with the coun-
ty clerk a copy thereof, and thereupon
such clerk shall enter in the judgment
docket the name of the person mentioned
in the warrant and the amount of the
tax  *  *  *. Thereupon the amount of
such warrant so docketed shall become a
lien upon the title to and interest in real
and personal property of the person
against whom the warrant is issued. The
city sheriff shall then proceed upon the
warrant in the same manner, and with
like effect, as that provided by law in re-
spect to executions issued against prop-
erty upon judgments of a court of records
*  *  *."

The business tax is published in the
same Code. During 1940–41 it was set
forth in c. 41, Title R; during 1941–48,

in c. 41, Title RR; since then, in c. 46,
Title B. The tax, now as before, impos-
es a tax "for the privilege of carrying on
*  *  *  for gain or profit within the city
any  *  *  *  business", with exceptions
not here relevant. § B46–2.0. The tax
is upon "receipts received in and/or al-
locable to the city from such  *  *  *
business". Persons subject to the tax
are required by § B46–4.0 to file returns,
and by § B46–5.0 to make payment of tax.
The provisions for administrative deter-
mination of the tax, for refunds, and for
proceedings to recover tax are parallel
to similar provisions governing the use
tax, and so need not be reproduced in this
opinion. § B46–6.0 to B46–10.0. (These
provisions also correspond with those un-
der earlier versions of the tax already
cited in the second sentence of this par-
agraph.)

C. Facts

During the period 1940 to 1949 Shapi-
ro and Mishel, defendants herein, were
not domiciled or resident in New York.
They filed no returns, and made no pay-
ments, on account of New York City use
or general business taxes for the period
August 1, 1940 to June 30, 1949. Octo-
ber 19, 1949 the Comptroller, following
the procedure of § M41–23.0 and § B46–
6.0 determined they owed such taxes. He
sent notices of these determinations by
mail to defendants in Boston, and to
one Joseph Friedman, 55 West 42 Street,
New York City, of whom the parties have
stipulated only that he "was either an em-
ployee of defendants or an independent
contractor at that address" [Stip. par.
2] These determinations pointed out
that under the law the taxpayers had to
apply to the Comptroller for a hearing.

Defendants' counsel, J. B. Sheftel,
Esq., by letter dated October 24, 1949, re-
quested "a hearing at which we may dis-
cuss all phases of this particular mat-
ter". December 21, 1949 the Assistant
to Special Deputy Comptroller advised
Sheftel that a hearing would be held.
April 17, 1950 Morris Saltzman, a so-
called "Conferee" delegated by the
Comptroller as a hearing officer, held "a
hearing to review" the Comptroller's two

**152**

determinations. Sheftel's opening statement of his contentions and the general course of the hearing on that day and on succeeding days when the case was being tried, that is on May 23, October 10, and November 16, 1950 make it transparent that Sheftel was making on behalf of his clients a general appearance. The proceeding fully lived up to Sheftel's request for a hearing on "all phases" of this particular matter.

At the hearing on November 16, 1950 the Conferee ordered that defendant Shapiro who was then testifying before him should return on the next hearing day and then produce certain books. Shapiro's counsel indicated he would not comply. The next hearing was held on January 4, 1951, but on that day nobody appeared for Shapiro or Mishel. On March 1, 1951, Conferee Saltzman (with the endorsed approval of the official in charge of the hearings unit) recommended that there be imposed on the two men, on account of that default, use taxes of $20,230.38 and business taxes of $353.74. Included in the approved recommendation was a finding that "there is sufficient warrant * * * to reasonably conclude that the office at 55 West 42nd Street, New York City, was an office of the taxpayer partnership" and that Friedman was "an employee, rather than an independent contractor, and that taxpayer partnership was doing business in New York City, making sales here, and subject to the jurisdiction of the Comptroller."

May 4, 1951, the Comptroller made against both defendants a "final determination" of the use tax in the amount of $20,230.38 and another final determination of the business tax in the amount of $353.74. Each determination was expressly made by reason of defendants' failure to attend the hearing scheduled for January 4, 1951. Each determination states it carries interest at the rate of 1% per month. Each recited that unless payment is received within 10 days, the Treasurer may issue and docket a warrant.

Neither defendant took any step to review in any court these determinations.

August 3, 1951 Assistant Deputy Collector Haley, acting for the Treasurer of the City of New York, issued to Warrant Agent Urgenson a warrant reciting that there had been found due, together with penalties, from Shapiro and Mishel individually and as co-partners use taxes of $20,840.63 and business taxes of $365; and directing the Warrant Agent to file a copy of this warrant in the office of the Clerk of New York County, "which Clerk shall enter in the judgment docket the amount of this warrant against Louis Shapiro and William J. Mishel, individually and as co-partners". The warrant then commands the agent to satisfy it out of personal property in the county, or if that is not sufficient, out of real property in the county.

August 6, 1951 Assistant Deputy Collector Haley notified defendants by a letter addressed to 55 West 42 St. New York that a "judgment" for $21,205.72 had been docketed.

August 10, 1951 Agent Urgenson returned that execution of the warrant was wholly unsatisfied.

No part of the warrant has been paid at any time.

September 16, 1952, the Treasurer of the City of New York authorized the bringing of this action "to enforce the payment of this warrant", and to make "a demand for payment of the * * * taxes separate from and independent of the warrant."

Thereupon, plaintiff filed complaint in this Court. Count 1 alleges that on May 4, 1951 the Comptroller, following statutory hearings at which defendants appeared, duly entered determinations assessing defendants with taxes, penalties and interest amounting to $20,584.12, and on August 3, 1951 judgment was entered thereon in favor of plaintiff for the sum of $21,205.72.

Count 2 of the complaint claims defendants owe for taxes $12,431.93 plus statutory penalties and interest.

### D. Conclusions of Law

Plaintiff's first count is obviously premised on the Full Faith and Credit Clause, Article IV, § 1 of the United States Constitution, on the supplementary statute, 28 U.S.C. § 1738, and on the decision rendered in Milwaukee County v. M. E. White Co., 296 U.S. 268, 56 S. Ct. 229, 80 L.Ed. 220. In the case just cited the Supreme Court held that, by virtue of its diversity jurisdiction, the United States District Court for Northern Illinois should entertain a suit against a citizen and a corporation of Illinois brought by a political entity of Wisconsin to recover on a judgment predicated upon an income tax due under Wisconsin laws. The main thrust of this decision remains unimpaired today. However, the Supreme Court would no doubt add one *caveat*. A federal court having only diversity jurisdiction will enforce a tax judgment if but only if the state court in the same area would enforce it either as a matter of constitutional obligation, or as a matter of comity or other policy. Cf. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Defendants contend, first, that the Milwaukee County case does not apply because there, unlike here, plaintiff had a judgment. That judgment constituted "an obligation to pay money in the nature of a debt upon a specialty"; and "a cause of action on a judgment is different from that upon which the judgment was entered." 296 U.S. at page 275, 56 S.Ct. at page 233. Here defendants assert plaintiff has only two types of documents: assessments, in the form of administrative determinations by the Comptroller, and warrants which, when docketed with the County Clerk, permit execution of the administrative determinations. It is said that neither the determinations nor the warrants constitute new obligations; if in the State of New York the City were to seek to enforce them by judicial proceedings it would fail; for in that State if the city wished to go to court, and did not wish to rely upon the special execution procedure established by §§ M41–27.0, subd. b and B46–10.0, subd. b of the Administrative Code, it would have to sue, in accordance with §§ M41–27.0, subd. a, of the Administrative Code, upon defendant's original statutory obligation to pay taxes.

■ The New York cases which this Court has read do not meet squarely this contention. Yet the total impact of the Administrative Code and the New York State cases goes far enough to require a conclusion that an uncontested or unappealed Comptroller's determination pursuant to either § M41–23.0 or § B46–6.0 is more than an assessment; it is a new obligation. Those sections provide that if the taxpayer does not contest the determination it "shall finally and irrevocably fix the tax". If the taxpayer does contest and applies for a hearing, and the Comptroller makes the same or another determination, and the taxpayer fails seasonably to apply for review by the Supreme Court of New York under article 78 of the New York Civil Practice Act, then it is equally clear that the determination is a final, binding, and new obligation. The determination would be *res judicata*. New York Central & H. R. R. Co. v. City of Yonkers, 238 N.Y. 165, 173, 144 N.E. 490; Horne Equipment Corp. v. McGoldrick, 168 Misc. 59, 5 N.Y.S.2d 357, affirmed 254 App.Div. 841, 6 N.Y.S.2d 336; Pelham Hall Co. v. Hassett, 1 Cir., 147 F.2d 63, 66. Indeed it would seem that the original obligation of the taxpayer under the tax law would have disappeared and have merged in the obligation expressed in the determination. Cf. Saltser & Weinsier, Inc. v. McGoldrick, 295 N.Y. 499, 68 N.E.2d 508.

■ But defendants press the argument that even if the determinations create new obligations, these obligations are not enforceable in New York by a suit at law upon the determinations. It is unnecessary to consider whether such a suit would lie. It is quite sufficient to point out that if such suit lay it would never be resorted to because it would give the City only what it now has as a

result of a final, unappealed determination—to wit, the power to levy execution and if that fails to take other remedies "as if the city had recovered judgment * * * and execution thereon had been returned unsatisfied". Administrative Code §§ M41–27.0, B46–10.0.

Defendants next say that even if the determinations do create in New York new obligations and these obligations are in New York as effective as judgments, nonetheless since they are not technically judgments they are not enforceable in a sister state under the Milwaukee County case ruling.

The shortest answer begins with noting that the Full Faith and Credit clause and the implementing statutes nowhere refer to "judgments". What a State is required to give full faith and credit to are to acts, records, and judicial proceedings.

United States Constitution, Article IV, § 1 provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof".

Following that constitutional authorization, Congress enacted 28 U.S.C. §§ 1738 and 1739. The former provides that "The records and judicial proceedings of any court of any * * * State * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken." The latter section provides that "all non-judicial records * * * shall have the same full faith and credit in every court * * * within the United States * * * as they have by law or usage in the courts * * * of the State * * * from which they are taken."

Both the Constitution and the statutes thus make it plain that it is of no consequence whether the proceeding before the Comptroller be regarded as a "judicial proceeding" or his determination as a "record" within the meaning of the full faith and credit clause and the Acts of Congress. For judicial proceedings and records of the state are both required to have " 'such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken'." Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 443, 64 S.Ct. 208, 216, 88 L.Ed. 149; Broderick v. Rosner, 294 U.S. 629, 55 S.Ct. 589; 79 L.Ed. 1100. Thus administrative determinations, if they create in their home state new obligations, and if those new obligations are enforceable by independent suit or by process equally effective, can be sued upon in a sister state. See R. H. Jackson, Full Faith and Credit—The Lawyer's Clause of The Constitution, XLV Col.L.Rev. 1, 15.

Nor can it be justly said that there is some reason of policy for distinguishing between a State's duty to give effect to a sister State's court judgment for taxes and its duty to give effect to a sister State's binding administrative determination of taxes. Every consideration recited by Mr. Justice Stone, 296 U.S. at pages 276–277, 56 S.Ct. at pages 233–234 of the Milwaukee County case applies equally to suits on judgments and suits on determinations.

There remain some miscellaneous points raised by defendants which can be summarily treated.

■ It is claimed that the determination made by the Comptroller should be upset on the ground that he never had jurisdiction *in personam* of defendants. But the facts stated above show the opposite. Defendants invoked the jurisdiction of the Comptroller. They participated fully in the matter. They made a general appearance before the Comptroller. See Henderson v. Henderson, 247 N.Y. 428, 432, 160 N.E. 775; Industrial Trust Co. v. Rabinowitz, 65 R.I. 20, 22, 13 A.2d 259, 129 A.L.R. 1236; Restatement, Conflict of Laws § 82.

It is argued that on its merits the Comptroller's determinations were in

error. For example, it is suggested that defendants had no employee in New York and were not doing business there. Also it is contended that the business tax was invalid under United Piece Dye Works v. Joseph, 307 N.Y. 780, 121 N.E.2d 617. Whether decided correctly or not, all questions as to the merits are now foreclosed. As repeatedly stated above, the Comptroller's determinations became new final binding obligations. The determinations are as effective as judgments in closing the door on earlier controversies.

 Defendants note that in his final determinations of May 4, 1951, the Comptroller included interest and penalties. But as to these inclusions, Milwaukee County v. M. E. White Co., 296 U.S. at pages 279, 280, 56 S.Ct. at page 235, stands as an authority favorable to plaintiff. Normal interest and moderate penalties for delinquency imposed by a tax law and entering into a tax judgment may be recovered when suit is brought on that judgment in a sister state.

The question is different, however, with respect to the interest and penalties added between the time of the determinations and the docketing of the warrants. These additions are not recoverable. Under the theory accepted by this Court —which admittedly departs from the precise language of Count 1—plaintiff is allowed to sue and recover here upon the basis of administrative determinations which are analogized to judgments. Plaintiff is not being allowed to recover on the warrants. Those warrants are not determinations or judgments of any kind; they are merely instructions to the equivalents of deputy sheriffs; they tell the agents receiving them what to do by way of execution, docketing, and the like.

In addition to the amount set forth in the determinations (that is, $20,584.12), plaintiff is entitled to interest, not penalties, at the 6% rate allowable in New York from the date the determinations were rendered, May 4, 1951, until judgment entered in this Court. See Restatement, Conflicts § 420; N.Y.Civil Practice Act, §§ 480, 481; General Business Law, McK.Consol.Laws, c. 20, § 370.

 Having prevailed on Count 1, plaintiff, of course, does not seek to recover also on Count 2. But it is not enough to dismiss that count. Defendants are entitled to a judgment thereon. That count seeks recovery on the basis of defendants' original liability for taxes under the use and business tax laws together with interest and penalties on such taxes (*not*, be it noted, interest and penalties on the Comptroller's determinations, nor on the warrants). This original liability has disappeared because it has been merged in the Comptroller's final determinations from which no appeal was taken.

Judgment for plaintiff on Count 1.

Judgment for defendants on Count 2.