Arthur Gr. Klein, J.
This is a motion for an injunction pendente lite restraining the enforcement of Local Law No. 343 for 1959 and collection of the taxicab tax imposed thereby. Plaintiffs’ action is for a judgment declaring that the local law and the State Enabling Act (L. 1959, ch. 369, § 5), pursuant to which it was adopted by the city, are unconstitutional.
A clear right to relief is required to warrant the drastic remedy of á temporary injunction during the pendency of an action in any case. Where it is sought to enjoin the collection of a tax adjudged by the authorities to be necessary for the maintenance of the government, it must clearly and plainly *544 appear that it conflicts with the fundamental law. Arguments addressed to matters of policy, such as the alleged effect of the tax in diminishing the use of taxicabs and the size of “ tips ”, are outside the province of the court, whose function is limited to deciding the legal issues.
Plaintiffs base their claim of unconstitutionality on two separate grounds: (1) That the State Enabling Act was enacted without a city home rule request in contravention of the provision therefor in the State Constitution and accordingly the local law adopted pursuant thereto is also invalid; (2) that the taxicab tax violates the equal protection and due process clauses of the Federal and State Constitutions.
Article IX of the State Constitution — the home rule article adopted in 1938 — provides (§ 12) that every city shall have the power to adopt local laws not inconsistent with the Constitution and the laws of the State relating to its “ property, affairs or government ”. Corresponding section 11 restricts the State Legislature’s power to enact such laws. It provides that the Legislature may act in relation to the ‘ ‘ property, affairs or government ” of any city only by general laws, except upon the request of the Mayor of the city affected concurred in by the local legislative body or upon the request of two thirds of the members of the local legislative body.
The Enabling Act in question, passed by the Legislature without any antecedent city message or request, authorized ‘ ‘ any city of the state having a population of one million inhabitants or more ” to adopt local laws imposing in any such city designated taxes for general revenue purposes, including, in section 5 thereof, a tax on the use or hire of taxicabs. Although the quoted phrase is general in terms and effect, ‘ ‘ the spirit of the Home Rule article is not satisfied by such a form of words alone ” (New York Steam Corp. v. City of New York, 268 N. Y. 137, 143). The Enabling Act is obviously a local law affecting only the City of New York.
But the real issue to be decided is whether an enabling act delegating to a city the power to impose a local tax comes within the purview of the home rule provisions. A study of their legislative history and of the pertinent cases and authorities compels the conclusion that enabling acts as such authorizing the imposition of local taxes do not relate to the property, affairs or government of a city within the meaning of the constitutional home rule provisions.
In Adler v. Deegan (251 N. Y. 467, 473), the words, “ property, affairs or government of any city”, were described as *545 words of art construed in prior judicial decisions, thus acquiring a special limited meaning in this context, with narrower significance than their defintions in Webster’s Dictionary. Home rule was intended to give the cities of the State increased control of their own “property, affairs or government” (Matter of Holland v. Bankson, 290 N. Y. 267, 270), the scope of which may be judged by the two-fold design ‘ ‘ to extend the field in which a city might legislate and to exclude the Legislature from that field” (New Rochelle Trust Co. v. White, 283 N. Y. 223, 230).
The power to impose taxes, vested exclusively in the Legislature in its “absolute, legitimate discretion” (Gautier v. Ditmar, 204 N. Y. 20, 27), obviously was not intended to be extended to the cities of the State by implication; and, certainly, it could not have been intended by the general phraseology of the home rule provisions ‘ ‘ to exclude the legislature ’ ’ from the field of local taxation. Indeed, section 12 recognizes the broad power of the State and the limited function of cities in this field by including among certain enumerated powers of cities, “ the collection and administration of local taxes authorized by the legislature.” In County Securities v. Seacord (278 N. Y. 34, 37), it was said: “ The power of taxation, being a State function, the delegation of any part of that power to a subdivision of the State must be made in express terms. It cannot be inferred.” Thus, section 1 of article XVI of the Constitution provides: ‘ ‘ Any laws which delegate the taxing power shall specify the types of taxes which may be imposed thereunder ”.
Since the enactment of tax laws has always been exclusively a State function, whose delegation to a city for local purposes must be made in express terms by the Legislature, an enabling act granting such power to a city is an essential precondition to its exercise (County Securities v. Seacord, supra). There is nothing in the home rule provisions showing such an express grant of power. As pointed out in the discussion of home rule by Chief Judge Cardozo in his concurring opinion in Adler v. Deegan (251 N. Y. 467, 490, supra) “the basic principle [is] that the power to adopt laws according to the usual forms of legislation resides with the Legislature except in so far as it has been limited or surrendered, and that neither limitation nor surrender will be inferred unless intention is revealed with reasonable clarity.” It follows that the power to impose a local tax is excluded from the meaning and operation of the home rule provisions, and that no home rule request is required *546 before the Legislature may pass enabling bills to grant such power.
It is significant that despite the enactment of numerous enabling acts in similar fashion over the years empowering a city to impose a local tax for general revenue purposes, research of counsel as well as of the court has failed to reveal a single reported case of a claim of unconstitutionality based upon alleged failure to comply with home rule requirements. Opinions, such as those in New York Steam Corp. v. City of New York (268 N. Y. 137, supra), and Salzman v. Impellitteri (305 N. Y. 414), while containing general language used by both parties in support of their respective arguments, were concerned with particular enabling laws tied in with other conditions or requirements fixed by the Legislature. Plaintiffs urge that these decisions are therefore not determinative of the issue here involved. But a careful reading of these cases and the other cases referred to in this opinion, joined with a review of the history of home rule and an analysis of its provisions, has led to the conclusion that in no event is a home rule request required before the enactment of an enabling act involving solely the delegation to a city of authority to impose local taxes for its general revenue purposes. It may be observed that the Attorney-General has on two separate occasions so advised the Legislature. (1943 Atty. Gen. 422; 1952 Atty. Gen. 188.)
Accordingly, it must be held as a matter of law that this Enabling Act does not contravene the home rule provisions of the Constitution and that the local law was validly adopted pursuant thereto.
We turn next to plaintiffs’ contention that this tax violates the equal protection clauses of the Federal and State Constitutions. Specifically, plaintiffs argue that the tax is unconstitutionally discriminatory in taxing users of taxicabs while leaving untaxed users of other means of public transportation; and also as between the users of taxicabs themselves, by the imposition of a flat tax of 10 cents for each trip regardless of the length of the trip or the amount of the fare.
The general principles of classification for purposes of taxation are well established and well known. The power to tax being legislative, all of the incidents thereof, including the extent and apportionment of the tax and upon what property or class of persons it shall operate, are matters within the range of discretion of the Legislature (Genet v. City of Brooklyn, 99 N. Y. 296, 306). “ The legislature has power to classify as it sees fit by imposing a heavy burden on one class of prop *547 erty and no burden at all upon others, the remedy for injudicious action being in the hands of the people, not of the courts ’ ’ {People ex rel. Hatch v. Reardon, 184 N. Y. 431, 445, affd. 204 U. S. 152). The power of the State to classify for purposes of taxation has been said to be ‘ ‘ of wide range and flexibility ’ ’ {Louisville Gas Co. v. Coleman, 277 U. S. 32, 37), and “ [considerations of practical administrative convenience and cost in the administration of tax laws afford adequate grounds for imposing a tax on a well recognized and defined class ” {Fernandez v. Wiener, 326 U. S. 340, 360).
The equal protection clause of the Fourteenth Amendment does not forbid selection of a particular class for taxation, “ if determined by some reasonable policy of differentiation, and all in the same class have equality” {New York Steam Corp. v. City of New York, 268 N. Y. 137, 146-147, supra). This is the standard of reasonableness used by the courts in resolving the question of alleged unconstitutional discrimination in taxation. But absolute equality, even within the same class, may be impracticable in taxation and is not required by the equal protection clause {Maxwell v. Bugbee, 250 U. S. 525, 543). Respecting the doctrine of separation of powers our courts do not interfere with the Legislature’s classification unless it is clearly apparent that it is entirely arbitrary. This fundamental principle was set forth in the following apt language in Matter of 436 W. 34th St. Corp. v. McGoldrick (288 N. Y. 346, 350): li The classifications here under review show no sign of hostile or oppressive discrimination. It is perfectly well settled that a tax does not offend against the equal protection clause simply because it reaches some businesses and allows the escape of others that might have been covered in {Matter of Schulte, Inc. v. Graves, 242 App. Div. 724; affd., 266 N. Y. 592). The question of constitutional validity disappears when it cannot be said that no state of facts reasonably justifying the classifications can be conceived (see Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232; New York Rapid Transit Corp. v. City of New York, 303 U. S. 573).”
Judged by these principles plaintiffs’ contention that the tax, to be valid, must be imposed on users of all means of public transportation is seen to be absurd. The Legislature may select for purposes of taxation a well-defined class within any designated category and leave untaxed all other classes comprising the category. The difference between surface and subsurface street railroads {Metropolitan St. Ry. Co. v. New York, 199 U. S. 1, 47) and between a street railroad and a *548 steam railroad running into the city and along its streets (Savannah Thunderbolt Ry., etc. v. Savannah, 198 U. S. 392) is sufficient to warrant diversity in taxation. So long as there is some rational basis to be discerned in the legislative policy of differentiation, the courts may not interfere. There are obvious differences with relation to the public interest in the use of the streets, degree of protection and involvement of public officials, and type of service supplied between the use of taxicabs and the use of trains, subways and buses. Moreover, it cannot be said that the Legislature was wholly unjustified if it found a sufficient difference between the hirers or users thereof to warrant the classification made.
Plaintiffs urge that the ‘ ‘ most glaring example of unconstitutional discrimination ” is between hirers of taxicabs and of “ coaches ” as defined in the New York City Administrative Code. It appears that a coach may carry up to seven passengers, has no meter and the charge is a fixed sum by zones. It may operate only from a coach hack stand in .“outlying” sections designated by the Police Commissioner. There are at present, according to the records of the Police Department, 16 coaches in the city, all of which are stationed on Staten Island. It is quite clear that, while there are some minor points of similarity, the substantial differences in their relation to the public interest between these two types of vehicles for hire furnish a reasonable basis for difference in tax classification, even without considering such practical matters as the difficulty in checking tax returns for coaches having no meters and the administrative cost and inconvenience involved in the extremely small return to be expected from that source.
Nor is the equal protection clause violated by the imposition of a flat rather than a graduated tax. A tax need not be measured by the value of the article or the extent of the service supplied. Practical considerations in the collection and administration of a tax may induce the Legislature to impose a flat tax, which, in effect, is a charge for the transaction, operating equally on all persons within the class regardless of the amount involved. “ A tax of two cents on every check, regardless of the amount for which it was drawn, and of five cents on a written contract, whether it covered a transaction involving hundreds or thousands, may be referred to as examples of what has been done without serious question in the imposition of excise taxes ” (People ex rel. Hatch v. Reardon, 184 N. Y. 431, 447, supra). Another example is the stock transfer tax (Tax Law, § 270, subd. 2) imposing a tax of 4 cents per share *549 where the selling price is $20 or more per share. Factual reasons justifying in the legislative view the flat tax of 10 cents per trip are apparent. Almost two thirds of taxicab trips are for amounts ranging between 35 cents and 80 cents. The taximeter registers each time the meter flag is turned down, thus providing a means of checking the number of trips and the honesty of tax returns. It is impractical to impose with regard to taxicabs a tax of a fixed percentage or a bracket system, such as is used in the sales tax. Calibration of the meter to effectuate any other method than the flat charge on the first one fifth of a mile and the check obtainable by the trip, register, appears to be mechanically and administratively impracticable, or so, at least, it could reasonably be determined by the Legislature. In any event, the 10 cents tax affects in fairly equal measure the great majority of the riders.
It is concluded that this tax does not violate the equal protection clauses of the Federal and State Constitutions.
Plaintiffs also complain of various incidental features of the local law. They urge, for example, that imposition of criminal penalties for willful failure to pay the tax upon the driver and owner, only secondarily liable, and not upon the hirer, though primarily liable, is violative of the involuntary servitude provision of the Thirteenth Amendment as well as due process. This type of secondary liability provision for ‘ ‘ wilfully failing to charge or pay over the tax ” is to be found in the New York City Sales Tax Law, the Horse Race Admissions Tax Law, the Amusement Tax Law and similar consumer tax laws. Charging of responsibility to the vendor or supplier with the obligation of taxpayer in addition to that of collecting trustee was sustained in Matter of Grant Co. v. Joseph (2 N Y 2d 196). Practical considerations evidently led to the exemption from criminal responsibility of the hirer, whose willful failure would involve only 10 cents, and the placing of criminal penalties upon a driver or owner, who might collect in excess of $100 a month in taxes per taxicab.
Other provisions to which objection is made are the allegedly onerous record-keeping requirements, the authorization to the Comptroller or the Treasurer to require a taxicab owner to file a bond to secure the payment of any tax, and the allegedly inadequate refund provisions in the law. These provisions follow the pattern of standard consumer tax laws and on their face appear to satisfy due process requirements.
None of these incidental complaints or objections, even if sustained, could be the basis for enjoining collection of the tax. *550 In view of the separability clause in the law, if any provision thereof were held invalid, the enforcement of such provision alone Avould be enjoined but the laAV itself Avould otherwise be unaffected.
The motion for an injunction pendente lite is accordingly denied.